[Civ. No. 8305.   Fourth Dist., Div. Two.   Nov. 20, 1967.]

TRUCK INSURANCE EXCHANGE, Plaintiff and Respondent, v. EARL S. WEBB et al., Defendants and Appellants.

---

Wilson, Wilson & Borror and John W. Moran for Defendants and Appellants.

Thompson & Colegate and Richard C. Field for Plaintiff and Respondent.

TAMURA, J.—This is a declaratory relief action to determine whether a comprehensive liability policy issued by plaintiff (Truck Insurance Exchange) covered the destruction by fire of two buildings occupied under a lease by the named insured, Reliable Foods, Inc., (Reliable).

The agreed facts on which the matter was submitted were as follows:

Reliable leased two commercial buildings from defendants Earl and Valah Webb for the conduct of its business. Robert Smith, Reliable's employee, while acting in the course and scope of his employment took a load of cardboard boxes from the buildings in a pick-up truck owned by Reliable, drove to an area "west of the buildings" and deposited the boxes on the ground. He thereafter ignited the boxes, got into the truck and drove back to the building. The fire spread to the buildings and damaged or destroyed them. A comprehensive liability policy issued by plaintiff to Reliable was then in effect.

Following the fire two actions were filed in the Superior Court in San Bernardino County, both of which are still pending. In one, the Webbs sued Reliable to recover damages for the destruction of the buildings, the damages sought including the subrogated claims of several insurance companies for amounts paid to the Webbs under fire insurance policies. In the second action Northwestern Mutual Insurance Co. sued Reliable and Robert Smith on a subrogated claim for payments made to the Webbs under its fire insurance policy.

Thereafter plaintiff instituted the present action against the Webbs and their fire insurance carriers to determine the extent, if any, of plaintiff's obligation under its comprehensive liability policy to indemnify the defendants in the two pending actions should judgment be recovered against them.

Plaintiff's policy insured against all damages which the insured becomes legally obligated to pay because of "(B) damage to property, arising out of the ownership, maintenance or use of any automobile, and (B-1) damage to property, except automobile." Under coverage "(B)" the unqualified word "insured" included any permissive user of an owned automobile. With exceptions not here material, the policy excluded from coverages "(B)" and "(B-1)" property owned, occupied or leased by the insured. The policy did not contain a "loading and unloading" provision in connection with the coverage for the use of an automobile.

On the basis of the foregoing facts the court decreed that plaintiff's policy did not provide coverage for the destruction of the buildings and that, by virtue of the policy provision excluding damage to property owned, occupied or rented by the insured, plaintiff was not obligated to indemnify Reliable on any judgment which might be rendered against it

in the pending actions. Defendants appeal from the judgment.

Defendants do not challenge the correctness of the court's determination that the exclusionary clause relieved plaintiff of any obligation to indemnify Reliable. They base their claim of coverage on the fact that Robert Smith, a defendant in one of the pending actions, is an additional insured under plaintiff's policy and against whom plaintiff may not invoke the exclusionary clause because he was neither an owner, lessee. or occupier of the buildings. On that assumption, defendants contend that the stipulated facts establish as a matter of law that Smith's liability is within the scope of coverage provided by the policy provision obligating plaintiff to indemnify against liability for damage to property "arising out of the use of any automobile."

Thus the issues presented on this appeal are (1) whether plaintiff may invoke the exclusionary clause as to Smith, and (2) if not, whether the destruction of the buildings was a loss "arising out of the use of any automobile."

On the first issue, the court in *Globe Indem. Co.* v. *Universal Underwriters Ins. Co.*, 201 Cal.App.2d 9 [20 Cal. Rptr. 73], held that a similar exclusionary clause in a public liability policy did not exclude from coverage the liability of a permissive user of an automobile for damage to property of the named insured. In that case, Hacker, a used car dealer, was insured under an "automobile-garage liability policy" issued by Universal which policy contained an exclusion for damages to "property owned by or rented to the insured. . . ." Moore, a prospective customer borrowed a car from Hacker and while driving it with the permission and consent of Hacker collided with a car driven by a third person damaging both vehicles. In holding that the exclusion of damage to property owned by the named insured could not "necessarily" be invoked when the automobile was operated by a permissive user, the court stated at page 19: "But here, Moore, the permissive user, did not own the car. He became an additional assured under the policy by operation of law. Moore damaged Hacker's car; Moore is liable; the policy protects him because the damaged car was not 'property owned' by him but by Hacker. We construe the policy against the insurer because it ' "prepared the policy" ' (*Narver* v. *California State Life Ins. Co.* (1930) 211 Cal. 176, 180 [294 P. 393, 71 A.L.R. 1374]); the 'presumption favors' the insured (*Iagomarsino* v. *San Jose etc. Title Ins.*

*Co.* (1960) 178 Cal.App.2d 455, 464 [3 Cal.Rptr. 80]). Universal cannot invoke the language of the exclusion, which it limited to the insured's 'owned' property, to embrace property not owned, but borrowed by, an additional insured.''

The reasoning in *Globe* is applicable to the present case. Smith, the additional insured, was not an owner, occupant or lessee of the buildings. ■ The policy must be strictly construed against the insurer and any ambiguity must be resolved in favor of coverage. (*Prickett* v. *Royal Ins. Co. Ltd.*, 56 Cal.2d 234, 237 [14 Cal.Rptr. 675, 363 P.2d 907, 86 A.L.R.2d 711]; *Exchange Cas. & Surety Co.* v. *Scott*, 56 Cal.2d 613, 619 [15 Cal.Rptr. 897, 364 P.2d 833]; *Hendricks* v. *Meritplan Ins. Co.*, 205 Cal.App.2d 133, 138 [22 Cal.Rptr. 682].) Plaintiff may not avail itself of the benefit of the exclusionary clause with respect to the liability, if any, of Smith.

It is, therefore, necessary to consider defendants' contention that the damage to the buildings was one ''arising out of the use'' of an automobile.

■ ''The term 'using', when used in a policy without restrictive terms, must be understood in its most comprehensive sense. It does not require that the injury be the direct and proximate result in any strict legal sense of the active movement of the motor vehicle covered by the policy.'' (*Columbia·Southern Chemical Corp.* v. *Manufacturers & Wholesalers Indem. Exchange*, 190 Cal.App.2d 194, 202 [11 Cal. Rptr. 762] [overruled on other grounds in *Continental Cas. Co.* v. *Zurich Ins. Co.*, 57 Cal.2d 27, 38 [17 Cal.Rptr. 12, 366 P.2d 455]]; *Universal Underwriters Ins. Co.* v. *Aetna Ins. Co.*, 249 Cal.App.2d 144, 150 [57 Cal.Rptr. 240]: *St. Paul Fire & Marine Ins. Co.* v. *Hartford Acc. & Indem. Co.*, 244 Cal.App.2d 826, 831 [53 Cal.Rptr. 650]; 12 Couch on Insurance (2d ed.) § 45.64, p. 153.)

''Use'' thus includes ''loading and unloading,'' even though, as in the policy involved in the present case, there is no specific provision covering such activities. (*Continental Cas. Co.* v. *Zurich Ins. Co.*, 57 Cal.2d 27, 33 [17 Cal.Rptr. 12, 366 P.2d 455]; *California Steel Buildings, Inc.* v. *Transport Indem. Co.*, 242 Cal.App.2d 749, 753-754 [51 Cal.Rptr. 797]; *General Pump Service, Inc.* v. *Travelers Ins. Co.*, 238 Cal. App.2d 81, 84-87 [47 Cal.Rptr. 533].) But a specific provision covering ''loading and unloading'' has been construed both in California as well as in other jurisdictions as an

extension, rather than a lmitation, on the meaning of the term "use of an automobile." (*American Auto. Ins. Co.* v. *American Fid. & Cas. Co.*, 106 Cal.App.2d 630, 635 [235 P.2d 645]; see *Entz* v. *Fidelity & Cas. Co.*, 64 Cal.2d 379, 387 [50 Cal.Rptr. 190, 412 P.2d 382]; *San Fernando Valley Crane Service, Inc.* v. *Travelers Ins. Co.*, 229 Cal.App.2d 229, 236 [40 Cal.Rptr. 165]; *Pacific Auto. Ins. Co.* v. *Commercial Cas. Ins. Co.*, 108 Utah 500 [161 P.2d 423, 160 A.L.R. 1251]; *August A. Busch & Co. of Mass., Inc.* v. *Liberty Mut. Ins. Co.*, 339 Mass. 239 [158 N.E.2d 351, 353]; 12 Couch on Insurance (2d ed.) § 45.126, p. 195.) Thus, it has been stated that the "loading and unloading" provision brings within the scope of the policy some actions in which the vehicle itself does not play any part. (*Pacific Auto. Ins. Co.* v. *Commercial Cas. Ins. Co., supra*; *American Auto. Ins. Co.* v. *American Fid. & Cas. Co., supra.*) In *Entz* v. *Fidelity & Cas. Co., supra,* 64 Cal.2d 379 at p. 387, the court stated that the effect of a "loading and unloading" provision ". . . is simply to expand the term 'use of the vehicle' so that coverage will extend from the commencement of loading until the completion of unloading." In construing a policy containing a "loading and unloading" provision, California is committed to the more liberal "complete operations" rule, instead of the "coming to rest" rule. (*Entz* v. *Fidelity & Cas. Co., supra,* at p. 384.) The former doctrine embraces all activities required to effect a completed delivery. (*American Auto. Ins. Co.* v. *American Fid. & Cas. Co., supra,* 106 Cal.App.2d 630, 634.)

Although the word "use" must be given an all-inclusive connotation, there must be a causal connection between the use and the injury. The automobile is so much a part of American life that there are few activities in which the "use of an automobile" does not play a part somewhere in the chain of events. Clearly the parties to an automobile liability policy do not contemplate a general liability insurance contract. (See *Gray* v. *Zurich Ins. Co.*, 65 Cal.2d 263, 274 [54 Cal.Rptr. 105, 419 P.2d 168].)

The test for determining the existence of the requisite causal connection has been expressed in varying language. It has been stated that the resulting injury must be a "natural and reasonable incident or consequence of the use of the [automobile] for the purposes shown by the declarations, though not foreseen or expected. . . ." and that the injury cannot be said to arise out of the use of an automobile "if it

was directly caused by some independent act, or intervening cause wholly disassociated from, independent of and remote from the use of the [automobile]." (*Schmidt* v. *Utilities Ins. Co.*, 353 Mo. 213 [182 S.W.2d 181, 184, 154 A.L.R. 1088] [160 A.L.R. 1275]; 12 Couch on Insurance (2d ed.) § 45.56, p. 148.) In Illinois the test for determining the existence of a causal relationship is whether the use of the automobile was the "efficient and predominating cause." (*General Acc. Fire & Life Assur. Corp.* v. *Brown*, 35 Ill.App.2d 43 [181 N.E.2d 191, 194]; *Clark* v. *Travelers Indem. Co.* (7th Cir. 1963) 313 F.2d 160; *Bituminous Cas. Corp.* v. *Hartford Acc. & Indem. Co.* (7th Cir. 1964) 330 F.2d 96, 98.) The Illinois rule is similar to the tests suggested by Professor Prosser in determining the existence of cause in fact in a negligence case, namely, whether the defendant's conduct was a "material element and a substantial factor" in bringing about the injury. (Prosser on Torts (3d ed.), § 41, p. 244.)

There have been no California cases presenting a factual situation similar to the one presented in the instant case in which the "use" coverage was not extended by a "loading and unloading" provision.

Cases in other jurisdictions, however, have held that the concept of "use" did not extend coverage to liability for injuries caused under comparable circumstances.

In *Zurich General Acc. etc. Co.* v. *American Mut. Liab. Ins. Co.*, 118 N.J. Law 317 [192 A. 387] (New Jersey), a driver of a milk delivery truck took a can of milk to a customer's store, deposited it in an ice box, went back to the truck and returned with a cake of ice which he was going to chop up and place in the ice box and as he was preparing to do so, an ice pick protruding from his pocket stabbed the customer. The court held that the unloading of the milk had been completed and that the driver's activity in servicing the product was "disconnected from the unloading" of the milk and hence did not arise out of the use of the truck.

In *Liberty Mut. Ins. Co.* v. *Hartford Acc. & Indem. Co.* (7th Cir. 1958) 251 F.2d 761 an employee of a paint company hauled several nearly empty cans of lacquer or paint to the city dump and instead of dumping them in an area designated for unburnable trash deposited them in the area reserved for burnable trash. A day later the fire reached the cans causing an explosion which injured a passerby. Notwithstanding the fact that the liability policy contained a "loading and unloading" provision and the fact that the

applicable Illinois appellate decisions had adopted the "complete operation" rule as against the "coming to rest" doctrine, the court held that the unloading had been completed and that the policy did not cover liability for the injury. A like result was reached by the same Court of Appeals in *Hartford Acc. & Indem. Co.* v. *Fireman's Fund Indem. Co.,* 298 F.2d 423, where an employee of a propane gas company unloaded a tank at the wrong address and, noting that the tanks already connected to the house were full but that the valves were in the "off" position, turned the valves to the "on" position. Upon learning that he was at the wrong address, he picked up the cylinder he had unloaded and took it to the correct address. The valves he had turned on caused gas to flow unimpeded into an empty basement causing an explosion. The court held that under the "complete operation rule," delivery had been completed and that the damage to the building did not arise out of the use of the vehicle.

The cases relied upon by defendants are clearly distinguishable. In those cases, the dangerous condition (*Merchants Co.* v. *Hartford Acc. & Indem. Co.,* 187 Miss. 301 [188 So. 571, 192 So. 566] [poles used to extricate truck from ditch left in roadway]; *Schmidt* v. *Utilities Ins. Co., supra,* 353 Mo. 213 [182 S.W.2d 181] [wooden blocks used as a ramp to back truck over left on sidewalk]; *Mullen* v. *Hartford Acc. & Indem. Co.,* 287 Mass. 262 [191 N.E. 394] [oil permitted to escape from crank case of parked truck causing a roadway to become slippery]) or the activity of the driver (*American Cas. Co.* v. *Southern Stages, Inc.,* 70 Ga.App. 22 [27 S.E.2d 227] [driver ejected passenger from bus for drunkenness]; *Owens* v. *Ocean Acc. & Guar. Corp.,* 194 Ark. 817 [109 S.W.2d 928] [ambulance attendant negligently permitting plaintiff to fall from stretcher as she was transported from house to ambulance]; *Kanios* v. *Frederick,* 10 Wis.2d 358 [103 N.W.2d 114] [operator of street maintenance vehicle momentarily stopped at intersection, signalled an automobile to proceed causing collision]) bore a direct and substantial relationship to the use of the vehicle. The fact that the "use" of the vehicle was the "predominating cause" of the injury is apparent in each of the cases.

In *General Acc. Fire & Life Assur. Corp.* v. *Hanley Oil Co.,* 321 Mass. 72 [72 N.E.2d 1, 171 A.L.R. 497] [excessive oil pumped from delivery truck into basement storage tank causing oil to overflow and spill upon the floor resulting in a fire without intervention of any other human act], a case also

relied upon by defendants, the existence and spreading of oil on the basement floor was deemed ''a continuing agency for harm'' and as being analogous to those cases where ''injury was done by an object which was in motion out of a motor vehicle.'' Under like circumstances, in a case also cited by defendants, *American Auto. Ins. Co.* v. *American Fid. & Cas. Co., supra,* 106 Cal.App.2d 630 [valves and pump at receiving depot left open by pump operator causing oil being delivered by tank truck to escape and flow into bay], the court held that under either the ''coming to rest'' or ''complete operation'' doctrine ''unloading'' had not been completed. In the present case the cardboard boxes had been unloaded and had come to rest. The harm was caused by the intervention of Smith's act in igniting them.

The only case cited by defendants where liability for an act unrelated to the ordinary use of an automobile was held to be covered is *Fidelity & Cas. Co.* v. *Lott* (5th Cir. 1960) 273 F.2d 500. In that case the insured while on a deer hunt stopped his vehicle, got out, and using the automobile as a gun rest, negligently fired through the roof of the car causing the bullet to ricochet and strike one of the occupants. The court held there was an actual physical use of the vehicle and that any ambiguity in the policy respecting the meaning of the word ''use'' should be resolved in favor of the insured.

In the present case although the use of the pick-up truck did play a part in the chain of events, it cannot be reasonably said that the destruction of the buildings arose out of the ''use'' of the vehicle. The conduct of Smith in igniting the boxes and leaving the fire unattended was independent of and unrelated to the use of the truck. The use of the truck was neither a ''predominating cause'' or a ''substantial factor'' in causing the injury. It is unnecessary to decide whether a different result would be required had the policy contained a ''loading and unloading'' clause extending the scope of the term ''use.'' (See *Entz* v. *Fidelity & Cas. Co.. supra,* 64 Cal.2d 379.)

The trial court correctly decreed that plaintiff's policy did not afford coverage for the loss or destruction of the buildings.

Judgment is affirmed.

McCabe, P. J., and Kerrigan, J., concurred.