[No. B161245. Second Dist., Div. Two. Oct. 29, 2003.]

CALIFORNIA AUTOMOBILE INSURANCE COMPANY, Plaintiff, Cross-defendant and Respondent, v. EVA HOGAN et al., Defendants, Cross-complainants and Appellants.

**COUNSEL**

Law Offices of Scott D. Bernstein and Scott D. Bernstein for Defendants, Cross-complainants and Appellants.

Hager & Dowling, John V. Hager and Joy L. Lim for Plaintiff, Cross-defendant and Respondent.

## OPINION

**DOI TODD, J.**—Defendants and cross-complainants, the legal heirs and estate of John V. Hogan, appeal the summary judgment entered in favor of respondent, California Automobile Insurance Company (CAIC), on respondent's complaint for declaratory relief and appellants' cross-complaint for breach of contract, breach of the covenant of good faith and fair dealing, and professional negligence. The issue presented in this appeal is whether the fatal injuries Mr. Hogan suffered during an altercation with an uninsured motorist while exchanging information following a traffic accident are covered under the uninsured motorist provisions of Mr. Hogan's automobile insurance policy issued by CAIC. We conclude they are not and affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

A car being driven by John V. Hogan was involved in a minor traffic accident with a motorcycle being driven by Giuseppe Lionetti. Mr. Hogan and his wife immediately got out of their car to speak to Mr. Lionetti, who had gotten off his motorcycle. In response to Mrs. Hogan's inquiry whether Mr. Lionetti and his passenger were all right, Mr. Lionetti responded that they were, but became irate, demanding to know who would pay for the damage. When Mr. Hogan asked Mr. Lionetti whether he had insurance, Mr. Lionetti became belligerent, and did not respond to Mr. Hogan's request to see his driver's license. Fearful of Mr. Lionetti because of his large, muscular build and his escalating anger, Mrs. Hogan ran to a nearby telephone to call the police. While she was gone, Mr. Lionetti punched Mr. Hogan in the face, knocking him to the ground, where he hit the back of his head on the pavement. When Mrs. Hogan returned, she found her husband lying unconscious and bleeding on the ground. Mr. Lionetti was leaving the scene on his motorcycle.

Mr. Hogan died five days later. The coroner concluded that "[t]he cause of death is sequelae of craniocerebral trauma. The manner of death is homicide." Mr. Lionetti pled guilty to manslaughter and was sentenced to state prison.

At the time of the accident and Mr. Hogan's death, an automobile liability insurance policy issued by CAIC to Mr. Hogan was in effect, which included uninsured motorist bodily injury coverage. Under Coverage H of the policy, "Damages for Bodily Injury Caused by Uninsured Motor Vehicles," CAIC agreed "[t]o pay all sums which an insured or his legal representative shall be legally entitled to recover as damages from the owner, or operator of an uninsured motor vehicle because of bodily injury, sustained by an insured, caused by accident and arising out of the ownership, maintenance, or use of

such uninsured motor vehicles. . . ."[1] For purposes of its summary judgment motion, CAIC conceded that Mr. Lionetti's vehicle qualified as an uninsured motor vehicle pursuant to Insurance Code section 11580.2, subdivision (b) and the CAIC policy definition of "uninsured motor vehicle."

After Mr. Hogan's death, appellants made a claim to CAIC for uninsured motorist bodily injury benefits under the policy. CAIC denied coverage and filed the instant action for declaratory relief. Appellants then filed a cross-complaint against CAIC which, at the time the summary judgment motion was heard, alleged claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and professional negligence.

The trial court granted CAIC's motion for summary judgment on the ground that Mr. Hogan's bodily injury did not arise out of Mr. Lionetti's use of the uninsured motor vehicle. The court entered judgment in favor of CAIC on its complaint for declaratory relief and against appellants on their cross-complaint. This appeal followed.

## DISCUSSION

The sole issue before us is whether Mr. Lionetti's liability for Mr. Hogan's fatal injury can be said to *arise out of the use of* Mr. Lionetti's uninsured motorcycle within the meaning of the uninsured motorist provision in the CAIC policy issued to Mr. Hogan. "Interpretation of the insurance policy presents a question of law for this court to decide. (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18 [44 Cal.Rptr.2d 370, 900 P.2d 619];*State Farm Mut. Auto. Ins. Co. v. Partridge* (1973) 10 Cal.3d 94, 100 [109 Cal.Rptr. 811, 514 P.2d 123] [*Partridge*].)" (*Interinsurance Exchange v. Flores* (1996) 45 Cal.App.4th 661, 668 [53 Cal.Rptr.2d 18].) In this case the pertinent facts are undisputed, and we consider those facts together with the language of the CAIC insurance policy to determine whether coverage for Mr. Hogan's injuries exists.

### A. Standard of Review

On appeal from a summary judgment we undertake a de novo review of the proceedings below, and independently examine the record to determine whether triable issues of material fact exist. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767 [107 Cal.Rptr.2d 617, 23 P.3d 1143]; *Kids' Universe v. In2Labs* (2002) 95 Cal.App.4th 870, 878 [116 Cal.Rptr.2d 158].)

---

[1] Although the policy expressly provides in the general liability sections under Coverages A and B that "[a]ssault and battery shall not be deemed an accident," there is no similar provision with respect to the uninsured motorist coverage set forth in Coverage H.

We review the trial court's ruling, not its rationale; thus, we are not bound by the trial court's stated reasons for granting summary judgment. (*Kids' Universe, supra,* at p. 878.)

### B. *"Use" of the Uninsured Vehicle*

■ In determining the meaning of the phrase "arising out of the . . . use" of the uninsured motor vehicle in the context of the CAIC policy here, we reject a"but for" causation analysis, and adopt the "predominating cause/substantial factor test," which has been applied by the majority of California courts that have considered the issue.

Our Supreme Court has explained that the phrase "arising out of the use," when used in a coverage or insuring clause of an insurance policy, has "broad and comprehensive application." (*Partridge, supra,* 10 Cal.3d at p. 100.) "It affords coverage for injuries where the insured vehicle bears 'almost *any* causal relation' to the accident at issue, however minimal." (*Interinsurance Exchange v. Flores, supra,* 45 Cal.App.4th at p. 668, citing *Partridge, supra,* at pp. 100–101, fns. 7 & 8.)

In *Partridge,* a passenger in the insured's truck was accidentally shot while the insured was driving the truck off-road hunting jackrabbits. The insured had manipulated the trigger mechanism of his pistol so that the gun would have a " 'hair trigger action.' " When the truck hit a bump, the gun discharged and caused injury to the insured's passenger. (*Partridge, supra,* 10 Cal.3d at pp. 97–98.) While the insurer disputed coverage under a homeowner's policy, coverage under the driver's automobile liability policy, which extended coverage to injuries " 'caused by accident arising out of the . . . use . . . of the owned motor vehicle' " (*id.* at p. 98) was not in dispute. The court nevertheless discussed this issue, noting that providing coverage for a "shooting" accident did not conflict with a long line of cases finding no automobile coverage for somewhat similar accidents. "Whenever circumstances reveal that the insured vehicle did bear some, albeit slight, causal connection with the shooting accident, courts have generally permitted recovery under automobile liability polices." (*Id.* at p. 101, fn. 8.) The court concluded that the policy provided coverage for the passenger's injuries. (*Id.* at pp. 98, 100–101.) The court explained: "The California cases uniformly hold that the 'use' of an automobile need not amount to a 'proximate cause' of the accident for coverage to follow. [Citations.]" (*Id.* at p. 100, fn. 7.) Although there must be "[s]ome minimal causal connection between the vehicle and an accident," even a slight causal connection between the use of the vehicle and the accident is sufficient. (*Id.* at pp. 100–101, fns. 7 & 8.)

Noting that the requisite causal connection to trigger coverage had not been defined by any California case, the court in *Partridge* compared the two

cases that had previously defined the parameters of the issue: *Universal Underwriters Ins. Co. v. Aetna Ins. Co.* (1967) 249 Cal.App.2d 144 [57 Cal.Rptr. 240], and *Truck Ins. Exchange v. Webb* (1967) 256 Cal.App.2d 140 [63 Cal.Rptr. 791] (*Webb*). In *Universal Underwriters*, the liability policy covered "damages . . . caused by accident and arising out of" certain defined hazards which included "the ownership, maintenance or use of any automobile." (*Id.* at pp. 149–150.) The issue in that case was whether the policy covered damages resulting from a collision which was due to the negligent repair of the car rather than negligent driving. The court concluded that it did. The court noted that the policy did not require that liability arise from negligence while using the vehicle: " 'The term "using" when employed in a policy without restrictive terms, must be understood in its most comprehensive sense. It does not require that the injury be the direct and proximate result in any strict legal sense of the active movement of the motor vehicle covered by the policy.' [Citations.]" (*Id.* at p. 150.)

On the other hand, the court in *Webb* required that use of the vehicle be a " 'predominating cause' or a 'substantial factor' in causing the injury." (*Webb, supra,* 256 Cal.App.2d at p. 148.) The issue in *Webb* was whether a policy which covers damage to property "arising out of the use of an automobile" covered the destruction of a building by a fire started when cardboard boxes unloaded from the insured vehicle were ignited. Acknowledging that "use" includes "loading and unloading" from a vehicle, the court nevertheless concluded there was no coverage. (*Id.* at pp. 144–145.) The *Webb* court reasoned: "The automobile is so much a part of American life that there are few activities in which the 'use of an automobile' does not play a part somewhere in the chain of events. Clearly the parties to an automobile liability policy do not contemplate a general liability insurance contract." (*Id.* at p. 145.)

Subsequent to *Partridge*, the "predominating cause/substantial factor test" has been applied in the majority of California decisions considering the issue. As set forth above, we adopt this test as well, for "[i]f 'any cause in fact' connection between injury and use of a vehicle were sufficient, then the mere fact that a vehicle is the situs of acts causing injury, or that a vehicle is used for transportation to the scene of a crime, would establish coverage. Prior cases do not support this approach." (*American Nat. Property & Casualty Co. v. Julie R.* (1999) 76 Cal.App.4th 134, 140 [90 Cal.Rptr.2d 119].)

### 1. *California cases support finding no coverage here.*

None of the California cases cited by either party involved the precise factual circumstances presented here, but we find the cases cited by CAIC to be persuasive:

In *Farmers Ins. Exchange v. Hansel* (1970) `12 Cal.App.3d 570 [90 Cal.Rptr. 654], the court denied coverage for an injury sustained during an altercation between two motorists. During the fight, one driver broke a bottle on the bumper of his own uninsured vehicle, and pretended to get into the car. He then stabbed the insured with the bottle from behind the car door. The court acknowledged that, in a sense, the uninsured automobile was used by the assailant when he committed the stabbing, but held that such use was not within any category covered by an automobile liability policy. Noting that "[v]ehicle liability policies must be interpreted with regard to 'the intent and reasonable expectation of the parties[]', " the court concluded that "[i]njury arising out of the use of an automobile as an instrument to create a weapon in the form of a broken bottle and as a shield for an assault with that weapon is not the form of loss for which the automobile liability policy may reasonably be expected to provide indemnity." (*Id.* at p. 574.)

Similarly, in *American Nat. Property & Casualty Co. v. Julie R.*, *supra*, 76 Cal.App.4th at page 139, the court denied coverage for injuries from a rape perpetrated inside an uninsured vehicle from which the victim had been unable to escape, holding that "[m]ere use of a vehicle in some way connected to the events giving rise to the injury is insufficient to establish coverage." The court noted that after *Partridge*, "subsequent cases have found coverage where a vehicle is being used in a manner that reasonably could be contemplated by the insurer and injury occurs in the course of such use." (*Julie R.*, *supra*, at p. 139.) But "where the role of the vehicle in the injury is merely as a situs for the act causing injury, courts have found that the injury does not arise from the use of the vehicle and that the injury is not covered." (*Ibid.*; see also *Rowe v. Farmers Ins. Exchange* (1992) 7 Cal.App.4th 964, 972 [9 Cal.Rptr.2d 314] ["the mere transportation of a tortfeasor to a site where he commits a tort after departing from the uninsured vehicle does not establish the requisite causal relationship"]; *United Services Automobile Assn. v. Ledger* (1987) 189 Cal.App.3d 779, 784–785 [234 Cal.Rptr. 570] [insufficient causal connection between use of vehicle and injury which resulted from one motorist stabbing another motorist during a fight]; *Aetna Casualty & Surety Co. v. Safeco Ins. Co.* (1980) 103 Cal.App.3d 694, 698 [163 Cal.Rptr. 219] [coverage denied where gunshot injury occurred *in the car*, but did not arise out of the *use* of the car].)

In *State Farm Mut. Auto. Ins. Co. v. Fernandez* (9th Cir. 1985) 767 F.2d 1299, 1302, two motorists, one insured, the other not, became involved in a physical altercation over the uninsured driver's refusal to switch from high beam to low beam headlights. After both drivers got out of their cars, the uninsured driver stabbed the other, who sought uninsured motorist coverage for his injury. The insured argued that the uninsured driver was "alighting" from his vehicle when he stabbed the insured. The court denied coverage, holding that the insured's injuries were not minimally

causally connected to the use of the uninsured vehicle. The court observed that "[e]ven if alighting from a vehicle is a 'use' of the vehicle, Fernandez's injuries did not arise out of that use. The term 'arising out of' requires at least a 'minimal causal connection' between the use of the vehicle and the injury." (*Id.* at p. 1302.) The court also rejected the insured's contention that his injuries arose out of the use of the uninsured vehicle's headlights, noting that "[t]he cases have uniformly held that an intervening intentional act breaks the causal connection between the use of an uninsured vehicle and an injury." (*Ibid.*)

All of these cases share a common thread: None of the injuries arose directly from the use or operation of the vehicle. Rather, the use of the vehicle, as transportation of the tortfeasor to the site where the injury occurred or as "furniture," was merely incidental to the direct cause of the injuries sustained.

So it is in the case at bar. There is no dispute that the immediate and direct cause of Mr. Hogan's fatal injuries was Mr. Lionetti's act of punching Mr. Hogan in the face with such force that he was knocked to the ground and hit his head on the pavement. The only role played by Mr. Lionetti's uninsured motorcycle was to transport Mr. Lionetti to the site where he then committed this crime against Mr. Hogan.

Appellants seek to distinguish these cases based on when the perpetrator formulated the intent to injure the other party. But appellants' analysis finds no support in any case, and its application does not aid in determining whether an injury arose out of the use of an uninsured vehicle.

Citing *Cocking v. State Farm Mut. Automobile Ins. Co.* (1970) 6 Cal.App.3d 965, 970 [86 Cal.Rptr. 193], appellants contend that consideration must be given "not only to what the person was doing upon injury, but also to his purpose and intent." *Cocking* has no application to the present case. In *Cocking* the plaintiff was driving an insured car with the owner's permission. The road conditions mandated the use of tire chains, and the plaintiff pulled off to the side of the road to put snow chains on the tires. While plaintiff was standing behind the car preparing to apply the chains, an uninsured motorist drove up from behind and struck plaintiff, causing him bodily injury. (*Id.* at p. 967.) The sole issue in *Cocking* was whether the plaintiff qualified as an insured or "covered person" under the policy for the vehicle he was driving, and the relevant inquiry was whether the plaintiff had been "occupying" the insured vehicle while outside the car preparing to put snow chains on the tires. The case presented no issue of whether plaintiff's injuries arose from the "use" of either vehicle, except to the extent that "use" of the vehicle could be equated with "occupying" it.

Appellants emphasize the continuity of events that led from the collision to Mr. Hogan's injuries and argue that "the two vehicles, the accident, and the injuries flowing from the accident are all part of one picture and constitute an unbroken chain of events arising from the subject accident." ▉ But we conclude that the intervening tortious act by Mr. Lionetti broke the chain of causation between the use of Mr. Lionetti's uninsured motorcycle and Mr. Hogan's injuries.

> 2. *Compliance with the Vehicle Code mandate to exchange information did not extend "use" of the uninsured vehicle to Mr. Lionetti's assault.*

Appellants contend that the requirement under the Vehicle Code that parties to a traffic accident stop and exchange information establishes the minimal causal connection between the use of Mr. Lionetti's vehicle and Mr. Hogan's injuries, and provides the critical distinction between this case and the cases relied upon by CAIC. We disagree.

Vehicle Code sections 20001 and 20002[2] require the driver of a vehicle involved in an accident to stop the vehicle at or near the scene of the accident and exchange certain information with the other driver. Failure to comply with these requirements constitutes a criminal offense which may result in the imposition of a fine or incarceration.

▉ In this case it is undisputed that an accident involving Mr. Hogan's vehicle and Mr. Lionetti's uninsured motorcycle occurred, and that Mr. Hogan was attempting to comply with the requirements of sections 20001 and 20002 when he was struck in the face and knocked to the ground by Mr. Lionetti. But Mr. Hogan's compliance with the statutory mandate was no more a "cause" of his fatal injuries than was his compliance with other traffic laws in effect at the time of the accident. The fact that Mr. Hogan was performing his statutorily mandated duty following the traffic accident does not change the fact that the only "use" of Mr. Lionetti's uninsured motorcycle in this tragic chain of events was as transportation to the site where the assault was committed. We therefore reject appellants' contention that Mr. Hogan's compliance with the statutory mandate rendered his interaction with Mr. Lionetti an integral part of the accident to which the uninsured motorist provision extends coverage. To the contrary, we conclude that Mr. Lionetti's assault was the sole legal cause of Mr. Hogan's injuries.

Similarly, the fact that Mr. Hogan was injured as he was carrying out his statutory obligations to exchange information following the accident does not

---

[2] All statutory references are to the Vehicle Code unless otherwise indicated.

render Mr. Lionetti's actions a part of the accident. Under the terms of the uninsured motorist provision in the subject policy and the case law discussed above, the only relevant inquiry in this case is whether Mr. Hogan's injuries arose out of the use of *Mr. Lionetti's* uninsured vehicle. While Mr. Hogan's act of getting out of his car to exchange information with Mr. Lionetti arguably increased his risk of harm, it did not alter the fact that his injuries did not arise out of any contemplated use of Mr. Lionetti's vehicle.

### 3. *Cases from other jurisdictions also support finding no coverage in this case.*

Numerous cases from other jurisdictions with facts nearly identical to this case support our conclusion that Mr. Hogan's injuries did not arise from the use of Mr. Lionetti's vehicle. In *Race v. Nationwide Mut. Fire Ins. Co.* (Fla. 1989) 542 So.2d 347, an uninsured driver rear-ended the insured who was stopped at a traffic light. During the exchange of identification and insurance information following the collision, the uninsured driver thought the insured was reaching for a gun and assaulted him, causing permanent injuries. Holding that the insured could not recover under the uninsured motorist provision of his automobile insurance policy, the Florida Supreme Court explained: "In the instant case, a minor traffic accident was caused by the negligence of . . . the driver of the uninsured vehicle. No injury resulted from this accident. . . . The most that can be said is that the driving of the uninsured motorist which caused the accident created an atmosphere of hostility between the parties. It had nothing to do with [the insured driver's] injuries, which only came about several minutes later when [the uninsured driver] thought [the insured] was reaching for a gun." (*Id.* at p. 351.)

Similarly, in *Laycock v. American Family Mut. Ins. Co.* (1997) 289 Ill.App.3d 264 [682 N.E.2d 382, 224 Ill.Dec. 821], the Illinois Appellate Court held uninsured motorist coverage did not exist where, following a near collision, the uninsured driver used his vehicle to stop and trap the insured in his car, and then exited his vehicle and assaulted the insured driver through the open window of the insured's car. The court explained: "While the words 'arising out of' have been interpreted broadly to mean originating from, incident to, or having a causal connection with the use of the vehicle [citation], the act of leaving the vehicle and inflicting a battery is an event of independent significance which is too remote, incidental, or tenuous to support a causal connection with the use of the vehicle despite the fact that the vehicle was used to stop and trap another vehicle." (*Id.* at p. 385.)

Courts in other jurisdictions are in accord. "The weight of authority is . . . that there is no motor vehicle coverage available for injuries sustained, when

following the impact of two vehicles, one irate driver attacks another." (*Rischitelli v. Safety Ins. Co.* (1996) 423 Mass. 703 [671 N.E.2d 1243, 1245], citing opinions involving similar factual situations: *Hamidian v. State Farm Fire & Casualty Co.* (1992) 251 Kan. 254 [833 P.2d 1007, 1013], *Mangum v. Weigel* (La.Ct.App. 1981) 393 So.2d 871, 873, *Foss v. Cignarella* (1984) 196 N.J.Super. 378 [482 A.2d 954, 957], and *Cummings v. State Farm Mut. Auto. Ins. Co.* (1991) 408 Pa.Super.Ct. 381 [596 A.2d 1138, 1140].) As summarized by the Ohio Court of Appeals, " '[t]he relevant inquiry is whether the chain of events resulting in the accident was unbroken by the intervention of any event unrelated to the use of the vehicle.' " (*Mileski v. Ortman* (1984) 16 Ohio App.3d 217 [475 N.E.2d 166, 167].) "A criminal act, such as the battery in this case, will break the causal chain because no reasonable standard would suggest that an automobile insurer intended to insure against such acts." (*Allstate Insurance Co. v. Skelton* (1996) 675 So.2d 377, 380.)

Appellants cite three Colorado cases in which coverage for intentional acts was found. The court's reasoning in *Cung La v. State Farm Auto. Ins. Co.* (Colo. 1992) 830 P.2d 1007 was not unlike that of the court in *Partridge.* In *Cung La,* three vehicles surrounded the insured's vehicle while he was driving on Interstate 70, and prevented him from changing the speed or direction of his car. A passenger fired a shot from one of the other vehicles injuring the insured. (*Id.* at p. 1008.) The court found coverage under the uninsured motorist provision, reasoning that without the vehicle the assailant would not have been able to keep up with the insured's car, restrict the movement of the insured's car, or shoot the insured. (*Id.* at p. 1011.) But the court expressly distinguished its holding from cases in which a shooting injury occurred after the vehicle used to transport the assailant had come to rest and was parked or stopped. (*Id.* at p. 1010.) As such, we cannot conclude that *Cung La* is helpful to appellants. Furthermore, we would agree that in *Cung La* the use of the vehicle was a substantial factor in causing the insured's injuries.

The two later Colorado cases on which appellants rely found coverage for assaults even after the transporting vehicle had come to a stop. (*Metropolitan Prop. & Cas. Ins. Co. v. Neubert* (Colo. 1998) 969 P.2d 733, 734 [good Samaritan who went to aid of driver and passengers of a car after driver had been shot was assaulted by passengers who mistakenly believed he had been involved in the shooting]; *Cole v. United Servs. Auto. Ass'n* (Colo. 2002) 68 P.3d 513, 515 [driver of an uninsured vehicle forced insured's vehicle to stop; during ensuing altercation between the two drivers, a passenger got out of uninsured vehicle and assaulted a passenger in insured

vehicle].) In addition to being factually distinguishable, we find the courts' reasoning in *Neubert* and *Cole* to be unpersuasive. In these cases, the use of the uninsured vehicle was merely incidental to, and not a substantial factor in, causing the injuries to the insured. The courts found coverage by applying a "but for" causation analysis, which we have rejected in favor of the predominating cause/substantial factor test applied in California and the majority of jurisdictions.

4. *Public policy does not support finding uninsured motorist coverage in this case.*

Appellants argue that public policy dictates a finding of coverage when the use of an uninsured vehicle is part of the chain of events leading to injury to the insured. We disagree.

The public policy upon which appellants rely supports indemnification for harm brought about by the operation of uninsured vehicles. (*Farmers Ins. Exchange v. Hansel, supra,* 12 Cal.App.3d at p. 573.) On the other hand, public policy also prohibits insurance coverage for willful and criminal acts. (Civ. Code, § 1668; Ins. Code, § 533; *Mullen v. Glens Falls Ins. Co.* (1977) 73 Cal.App.3d 163, 169 [140 Cal.Rptr. 605].)

We are mindful that "coverage clauses of insurance policies are to be 'interpreted broadly so as to afford the greatest possible protection to the insured. . . .' (*Partridge, supra,* 10 Cal.3d at p. 101.) However, '[t]he scope of coverage of a vehicle liability policy is to be construed with regard to the intent and reasonable expectations of the insured.' (*Interinsurance Exchange v. Macias* (1981) 116 Cal.App.3d 935, 938 [172 Cal.Rptr. 385].) Uninsured motorist coverage ' "is not intended to—and does not—act as a substitute for general (and not merely automotive) liability coverage of persons . . . who, by chance, happen also to be uninsured motorists." ' (*Rowe v. Farmers Ins. Exchange, supra,* 7 Cal.App.4th at p. 967, quoting *State Farm Mut. Auto. Ins. Co. v. Spann* (1973) 31 Cal.App.3d 97, 100 [106 Cal.Rptr. 923].)" (*American Nat. Property & Casualty Co. v. Julie R., supra,* 76 Cal.App.4th at p. 143.)

▇ In this case, the collision with the uninsured vehicle was not the immediate cause of Mr. Hogan's injury. Nor was the injury caused by the operation of the uninsured vehicle.[3] Finally, Mr. Lionetti was not a "motorist" when he punched Mr. Hogan in the face. The immediate and direct cause of Mr. Hogan's fatal injury was the criminal assault by Mr. Lionetti, which took

---

[3] It is worth noting that under Insurance Code section 11580.2, subdivision (b)(1), where the owner or operator of an uninsured motor vehicle is unknown, uninsured motorist coverage applies only if "[t]he bodily injury has arisen out of physical contact of the automobile with the insured or with an automobile which the insured is occupying."

place after Mr. Lionetti had removed himself from his uninsured vehicle. Public policy does not support a finding of coverage in this case.

## C. *Appellants Are Not Entitled to Additional Discovery*

Relying on *Frazee v. Seely* (2002) 95 Cal.App.4th 627 [115 Cal.Rptr.2d 780], appellants assert that the trial court erred in granting the motion for summary judgment without permitting appellants to conduct additional discovery pursuant to Code of Civil Procedure section 437c, subdivision (h). We disagree.

In their opposition to the motion for summary judgment, appellants requested that the court deny or continue the motion on the ground that CAIC had "been less than forthright" in its discovery responses, and additional discovery was needed to present facts in opposition to the motion.[4] Appellants provided no details concerning the evidence they expected to develop through additional discovery or why further discovery was necessary.

Code of Civil Procedure section 437c, subdivision (h) provides that a motion for summary judgment or adjudication shall be denied, or a continuance shall be granted, " '[i]f it appears from the affidavits submitted in opposition . . . that facts essential to justify opposition may exist but cannot, for reasons stated, then be presented. . . .' " The *Frazee* court explained that "[t]he non-moving party seeking a continuance 'must show: (1) the facts to be obtained are essential to opposing the motion; (2) there is reason to believe such facts may exist; and (3) the reasons why additional time is needed to obtain these facts. [Citations.]' (*Wachs v. Curry* (1993) 13 Cal.App.4th 616, 623 [16 Cal.Rptr.2d 496].)" (*Frazee v. Seely, supra,* 95 Cal.App.4th at p. 633.) The decision whether to grant such a continuance lies within the discretion of the trial court. (*Ibid.*)

Appellants failed to meet any of the requirements for obtaining a continuance articulated by *Frazee*. The declaration they submitted in support of their request falls far short of the requisite good faith showing "that a continuance is needed to obtain facts essential to justify opposition to the motion," nowhere setting forth what facts appellants hoped to obtain through further discovery or showing how such facts were essential to opposing CAIC's motion for summary judgment.

---

[4] The record in this case does not indicate an explicit ruling on appellants' request, but we presume it was denied based on the court's grant of summary judgment. (Cf. *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133–1134 [275 Cal.Rptr. 797, 800 P.2d 1227] [if omission in statement of decision not raised in trial court, on appeal the court will presume findings in favor of the ruling].)

We therefore conclude that there was no abuse of discretion in the trial court's denial of appellants' request for a continuance under section 437c, subdivision (h) of the Code of Civil Procedure.

## DISPOSITION

The judgment in favor of respondent is affirmed. The parties are ordered to bear their own costs of appeal.

Nott, Acting P. J., and Ashmann-Gerst, J., concurred.

A petition for a rehearing was denied December 1, 2003, and appellants' petition for review by the Supreme Court was denied January 14, 2004.