[No. A114986. First Dist., Div. Five. Aug. 28, 2007.]

R. A. STUCHBERY & OTHERS SYNDICATE 1096, Plaintiff and
Appellant, v.
REDLAND INSURANCE COMPANY, Defendant and Respondent.

COUNSEL

Davidovitz & Bennett, Moris Davidovitz and Patricia S. Lakner for Plaintiff and Appellant.

Hamrick & Evans, A. Raymond Hamrick III and David A. Evans for Defendant and Respondent.

OPINION

**SIMONS, Acting P. J.**—In this insurance coverage dispute, R. A. Stuchbery & Others Syndicate 1096, as Underwriters at Lloyds, London subscribing to Policy No. BA 98 01045LO145 (Stuchbery), insured M & M Luxury Shuttle, Inc. (M & M), a shuttle service operator, and Mostafa Tehrani (Tehrani), an officer and director of M & M, under a general liability policy. Stuchbery defended and ultimately indemnified these insureds in a lawsuit filed by a passenger (the victim) who alleged she had been sexually assaulted by M & M's driver. Redland Insurance Company (Redland) also insured M & M and Tehrani under a business automobile policy and, following the conclusion

of the passenger's lawsuit (the Underlying Action), Stuchbery filed an action against Redland, seeking reimbursement or equitable contribution for its defense costs and indemnification payment.

Stuchbery appeals a summary judgment entered in favor of Redland after the trial court determined that Redland had no duty to defend or indemnify M & M or Tehrani in the Underlying Action, and therefore Stuchbery was not entitled to reimbursement or equitable contribution from Redland. We conclude that, as a matter of law, the victim's injuries did not result from the "use" of the M & M shuttle and affirm the trial court's judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

Stuchbery concedes that the material facts in this case are undisputed. The Underlying Action was filed against M & M, Tehrani and one of M & M's drivers, Collie George Downer (Downer). The plaintiff in that case (the victim), who was 16 years old at the time of the incident, alleged that at or about 1:00 a.m. on January 12, 2000, while at the Civic Center in San Francisco, she asked Downer to transport her to a teen shelter. He agreed, but instead of taking her there, Downer drove her to his apartment and raped her. The complaint alleged causes of action for (1) common carrier liability; (2) childhood sexual abuse; (3) assault; (4) battery; (5) sexual battery; (6) intentional infliction of emotional distress; (7) negligent hiring and/or retention of an unfit employee; (8) negligent training and supervision; (9) false imprisonment; and (10) violation of Civil Code section 51.7.

The victim testified in a concurrent criminal action, and her testimony was submitted in the motion for summary judgment in this insurance dispute. She had run away from home because she "needed a break" from her parents and did not want to go to school. After arriving at the Civic Center in San Francisco, she "kept walking" as she looked for a "shelter for run-away people, homeless people," until she saw Downer in front of a diner with his shuttle. Downer asked the victim what she was doing out and how old she was, and suggested she call her mother. The victim became concerned that Downer would "call the cops" and she would be sent home. She asked him to take her to a shelter, and he agreed. She testified she approached Downer in his capacity as a driver of a shuttle, and would not have entered the shuttle if she believed it was a private vehicle.

The victim testified that the shuttle stopped in front of Downer's apartment. Downer told her the shelters were closed until 6:00 a.m., and that she could sleep in his apartment while he returned to work. The victim responded, "Fine," because she "figured" she would sleep at Downer's apartment for a few hours and have him take her to the shelter in the morning. The

two went through the entryway, went up at least one flight of stairs and walked inside. According to the complaint, Downer "caused [the victim] by threat of intimidation and physical violence to remain in his apartment for a period of approximately [five] hours. During this time . . . Downer sexually assaulted and battered [the victim] . . . ."

In June 2002, M & M and Tehrani tendered their defense and indemnity in the Underlying Action to Stuchbery, which agreed to defend subject to a reservation of rights. In January 2004, M & M and Tehrani tendered their defense and indemnity to Redland, which initially accepted the tender under a reservation of rights, but after conducting a coverage investigation declined to defend or indemnify. Stuchbery incurred $274,549.40 in attorney fees and costs in defending M & M and Tehrani in the Underlying Action, $195,723.11 of which was incurred after M & M and Tehrani tendered to Redland. Stuchbery also incurred $250,000 in settling the victim's claims against M & M and Tehrani.[1]

In April 2005, Stuchbery filed this action against Redland, asserting it was entitled to reimbursement from Redland because Redland alone was responsible for defending and indemnifying M & M and Tehrani. In the alternative, Stuchbery claimed that both Stuchbery and Redland had a duty to defend and indemnify and Stuchbery was entitled to equitable contribution from Redland.

Redland filed the instant motion for summary judgment, asserting there was no potential for coverage under its policy. The trial court agreed and concluded that because Redland had no duty to defend or indemnify M & M and Tehrani, Redland owed no reimbursement or equitable contribution to Stuchbery.[2] Stuchbery filed a timely notice of appeal.

### DISCUSSION

"[A] liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity. [Citation.]" (*Horace Mann Ins. Co. v. Barbara B.* (1993) 4 Cal.4th 1076, 1081 [17 Cal.Rptr.2d 210, 846 P.2d 792]; accord, *Ortega Rock Quarry v. Golden Eagle Ins. Corp.* (2006) 141 Cal.App.4th 969, 977 [46 Cal.Rptr.3d 517].) "The insurer is entitled to summary adjudication that no potential for indemnity exists and thus no duty to defend exists if the evidence establishes as a matter of law that there is no coverage. [Citation.] We apply a de novo standard of review to an order

---

[1] The victim obtained a default judgment against Downer, who did not appear in the civil action.

[2] Stuchbery had filed a concurrent motion for summary adjudication of the issue of Redland's duty to defend or indemnify, which the trial court denied on the same day it granted Redland's motion for summary judgment.

granting summary judgment when, on undisputed facts, the order is based on the interpretation or application of the terms of an insurance policy. [Citation.]" (*Smith Kandal Real Estate v. Continental Casualty Co.* (1998) 67 Cal.App.4th 406, 414 [79 Cal.Rptr.2d 52].)

 "The rules governing policy interpretation require us to look first to the language of the contract in order to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it. [Citations.]" (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18 [44 Cal.Rptr.2d 370, 900 P.2d 619].) "If contractual language is clear and explicit, it governs. [Citation.]" (*Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1264 [10 Cal.Rptr.2d 538, 833 P.2d 545].) "A policy provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable." (*Waller*, at p. 18.) "But if 'a term in an insurance policy has been judicially construed, it is not ambiguous and the judicial construction of the term should be read into the policy unless the parties express a contrary intent.' [Citation.]" (*CDM Investors v. Travelers Casualty & Surety Co.* (2006) 139 Cal.App.4th 1251, 1257 [43 Cal.Rptr.3d 669].) However, we apply this rule only after determining that "the context in which the construed term appears is analogous to the context of the term before us." (*Lockheed Martin Corp. v. Continental Ins. Co.* (2005) 134 Cal.App.4th 187, 197 [35 Cal.Rptr.3d 799].) "The scope of coverage . . . is to be construed with regard to the intent and reasonable expectations of the insured. [Citations.]" (*Interinsurance Exchange v. Macias* (1981) 116 Cal.App.3d 935, 938 [172 Cal.Rptr. 385].) It is the burden of the insured "to bring the claim within the basic scope of coverage." (*Waller*, at p. 16.)

Redland's policy provides in pertinent part: "We will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.' " Attached to the policy is a motor carrier endorsement which contains similar language, as follows: "[T]he insurer . . . agrees to pay . . . any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles . . . ." Resolution of this matter requires us to interpret that portion of Redland's policy providing coverage for a " 'bodily injury' . . . resulting from the . . . use of a covered auto."[3]

---

[3] Stuchbery asserts, without persuasive analysis or reference to relevant authority, that "Redland's indemnity obligation was also triggered by M & M's *ownership* of the automobile." (Italics added.) Redland also states in a summary fashion that there was no potential for coverage under its policy because the victim's injuries were not caused by an *accident*. We will not address these contentions, for "[w]hen an issue is unsupported by pertinent or cognizable

The California Supreme Court addressed the meaning of the phrase "use . . . of a motor vehicle" in *State Farm Mut. Auto. Ins. Co. v. Partridge* (1973) 10 Cal.3d 94 [109 Cal.Rptr. 811, 514 P.2d 123] (*Partridge*), and acknowledged two cases that had defined it in distinctly different ways. *Universal Underwriters Ins. Co. v. Aetna Ins. Co.* (1967) 249 Cal.App.2d 144, 150–151 [57 Cal.Rptr. 240], held that " '[t]he term "us[e]," when employed in a policy without restrictive terms, must be understood in its most comprehensive sense. It does not require that the injury be the direct and proximate result in any strict legal sense of the active movement of the motor vehicle covered by the policy.' [Citations.]" In contrast, *Truck Ins. Exch. v. Webb* (1967) 256 Cal.App.2d 140, 148 [63 Cal.Rptr. 791] requires that the use of the vehicle be a " 'predominating cause' or a 'substantial factor' in causing the injury." (See generally *American Nat. Property & Casualty Co. v. Julie R.* (1999) 76 Cal.App.4th 134, 139–140 [90 Cal.Rptr.2d 119] (*Julie R.*).) *Partridge* found it unnecessary to resolve whether *Universal Underwriters v. Aetna Ins. Co., supra*, 249 Cal.App.2d 144, or *Truck Ins. Exch. v. Webb, supra*, 256 Cal.App.2d 140, correctly interpreted the phrase "use of the vehicle" because in *Partridge*, the insurance policy "clearly" covered the accident. (*Partridge*, at p. 100, fn. 7.) Subsequent to *Partridge*, however, the majority of California decisions considering the issue have applied the "predominating cause/substantial factor test." (*State Farm Mutual Automobile Ins. Co. v. Grisham* (2004) 122 Cal.App.4th 563, 566–567 [18 Cal.Rptr.3d 809] (*Grisham*); *Julie R.*, at p. 140.) Under this test, a mere "but for" connection between the use of the vehicle and the alleged injuries is insufficient to bring the claim within the scope of coverage. "To hold otherwise would convert auto liability policies into general liability policies. [Citation.]" (*Grisham*, at p. 567.)

In *Julie R.*, the automobile policy at issue provided coverage for " 'bodily injury . . . result[ing] from the ownership, maintenance or use of the vehicle.' " (*Julie R., supra*, 76 Cal.App.4th at p. 137.) There, the plaintiff was driven by the assailant in his car to a secluded location and raped. The assailant had parked the car next to a fence in such a way as to keep the door closed, and reclined the plaintiff's seat to prevent her from escaping. (*Ibid.*) The court held that causation could not be proved simply by showing that a vehicle was a " 'cause in fact' " of the injury. (*Id.* at p. 140.) Instead, *Julie R.* concluded use of the vehicle had to be a "predominating cause or substantial factor" in the injury, and the mere use of the vehicle as transportation to the scene of the injury did "not establish a sufficient causal connection between the 'use' and the injury." (*Ibid.*) *Julie R.* relied on *Truck Ins. Exch.* where a truck was used to transport cardboard boxes to a location where the boxes

legal argument it may be deemed abandoned and discussion by the reviewing court is unnecessary. [Citations.]" (*Landry v. Berryessa Union School Dist.* (1995) 39 Cal.App.4th 691, 699–700 [46 Cal.Rptr.2d 119].)

were ignited and caused buildings to burn. Though the truck's "use" played a part in the chain of events " 'it [could not] be reasonably said that the destruction of the buildings arose out of the "use" of the vehicle.' " (*Julie R.*, at p. 141, quoting *Truck Ins. Exch. v. Webb, supra,* 256 Cal.App.2d at p. 148.)

*Julie R.* next noted that "where the role of the vehicle in the injury is merely as a situs for the act causing injury, courts have found that the injury does not arise from the use of the vehicle and that the injury is not covered." (*Julie R., supra,* 76 Cal.App.4th at p. 139.) "For example, coverage was denied for an injury caused when a gun inside a car at rest discharged because the bolt of the gun was pulled back." (*Ibid.*, citing *Aetna Casualty & Surety Co. v. Safeco Ins. Co.* (1980) 103 Cal.App.3d 694 [163 Cal.Rptr. 219].) In *Aetna*, an occupant of the car pulled back the bolt of a rifle to chamber a round of ammunition and accidentally discharged the gun, causing injury. The court held the injury did not arise out of the "use" of the car, but arose out of the "conduct" of the person who pulled back the bolt of the rifle. (*Aetna*, at p. 698.)

*Julie R.* acknowledged that the assailant's "placement of his vehicle against the fence increased the danger that he would be successful in carrying out his intent to rape Julie R.," but held that the rape " 'originated from, grew out of [and] flowed from' [the assailant's] intent to rape Julie R. and his actions with his body to achieve that end," not from the use of the car. (*Julie R., supra,* 76 Cal.App.4th at p. 141.) Thus, the car's "use was a circumstance accompanying the rape, not a predominant cause or substantial factor in Julie R.'s injury." (*Id.* at p. 142.) In reaching this conclusion, *Julie R.* relied on *Farmers Ins. Exchange v. Hansel* (1970) 12 Cal.App.3d 570 [90 Cal.Rptr. 654] where "the court held that an automobile insurance policy did not provide coverage even though physical aspects of the car were used in perpetrating an attack." (*Julie R.*, at p. 142.)

*Julie R.* supports the trial court's determination in the present case. As in *Julie R.*, the M & M shuttle was merely used to transport the victim to the locale of the rape. Her injury resulted from Downer's conduct and his intent to rape the victim in his apartment, not from the "use" of the shuttle. The connection between the shuttle and the victim's injuries was even more attenuated than in *Julie R.*, as the victim's rape did not take place inside the shuttle and there was also no allegation that Downer used the shuttle to trap his victim.[4] The use of the shuttle merely to drive the victim to Downer's apartment "d[id] not establish a sufficient causal connection between the 'use' and the injury." (*Julie R., supra,* 76 Cal.App.4th at p. 140.)

---

[4] As noted, the victim's complaint included a cause of action for false imprisonment, but the complaint alleged the victim was falsely imprisoned in Downer's apartment, not in the shuttle.

Stuchbery does not dispute *Julie R.*'s analysis or its conclusion that coverage exists only when the use of the covered automobile is a substantial factor or predominate cause of the injury. Stuchbery contends, however, we should distinguish *Julie R.*, and the cases on which it relies, because they involved *private vehicles*, not *common carriers*. Stuchbery argues, in effect, that with a common carrier, the use of the vehicle is always a substantial factor in a case where a passenger is injured by the driver's physical assault. Stuchbery contends the relationship between a common carrier driver and passenger is defined by the common carrier vehicle; there would be no relationship, and hence no opportunity to assault and injure the victim, but for the vehicle. This, Stuchbery contends, distinguishes our case from the typical private vehicle case, like *Julie R.*, where the parties have a private relationship outside and apart from the vehicle, and the assault could have occurred elsewhere and under circumstances not involving a vehicle.

Stuchbery principally relies on *Connell v. Clark* (1948) 88 Cal.App.2d 941 [200 P.2d 26] (*Connell*). In *Connell*, directly following a dispute regarding the cab fare, the taxi driver dragged his passenger from the vehicle and assaulted and battered him. (*Id.* at p. 946.) The passenger sued the taxicab operators and the insurance company that provided liability insurance to the operator. A municipal ordinance required taxicab operators to be adequately insured and provided that "the taxicab operator shall pay all damages to person or property, for the payment of which he may become liable arising *out of the conduct of the business of taxicab operator.*" (*Connell*, at p. 945, italics added.) *Connell* did not quote the insurance policy language, but read the provisions of the ordinance into the policy. (*Id.* at p. 950.) The court concluded it was "too patent to be susceptible to argument" that the damages resulted from the operation of a taxicab. (*Ibid.*)

*Connell* is inapposite. First, the assault was apparently triggered by a dispute directly related to the business operation of the cab. Second, *Connell* never states that its definition of the term "operation" hinged on the common carrier status of the vehicle or that for common carriers the use of the vehicle is always a substantial factor for injuries to a passenger resulting from a driver assault. In fact, *Connell* is a pre-*Partridge* case, and the court may have been applying the lesser "cause in fact" standard more widely used at that time, even for passengers of private vehicles. (See *Julie R., supra*, 76 Cal.App.4th at p. 140.) As discussed, *ante*, the "predominating cause/substantial factor test" has prevailed since *Partridge*.

■ The factual distinction between *Connell* and this case highlights the flaw in Stuchbery's position. Even if the interpretation of the phrase in the subject insurance policy "injury . . . resulting from the . . . use of a covered auto" should take into account whether the vehicle at issue is a common

carrier, the assault in this case is simply too attenuated from the use of the shuttle. As noted, the passenger in *Connell* was attacked while sitting inside the taxicab. The attack appears to have been triggered by a fare dispute, and the passenger was "dragged out of the cab by the driver" at the beginning of the attack. (*Connell, supra*, 88 Cal.App.2d at p. 950.) In contrast, the victim in the Underlying Action was not injured while a passenger inside the shuttle. Her testimony reveals that she exited the shuttle on her own and, without being subject to either physical or verbal coercion from Downer, went into his apartment, "figur[ing]" she would sleep there for a few hours until the shelters reopened in the morning. Thus, even if *Connell* is correctly decided and *Julie R.* would have been decided differently had the rapist's vehicle been a common carrier, here, the relationship between the "use" of the M & M shuttle and the rape inside the apartment was too attenuated to trigger Redland's duty to defend or indemnify.

Stuchbery's reliance on several out-of-state cases, principally *Mironov v. New York Mutual Underwriters* (N.Y.App.Div. 1989) 147 A.D.2d 761, 762 [537 N.Y.S.2d 345] (*Mironov*), is similarly misplaced.[5] In *Mironov*, the policy language was quite similar to the language in this case, and the court found the insurance company had a duty to defend or indemnify a passenger injured in an assault by a driver of a common carrier. "While cases generally hold that there would be no coverage under an automobile policy where one occupant of a vehicle intentionally inflicts violence on another occupant . . . [citations], where the policy of insurance is issued to cover a common carrier, coverage has been found [citations]." (147 A.D.2d at p. 762.)[6] But *Mironov* and the other out-of-state cases on which Stuchbery relies are factually distinguishable; as in *Connell*, the alleged assaults in those cases occurred *inside* the vehicles. Thus, even if we were to find that the subject phrase in Redland's policy should be interpreted more broadly when the insured is a common carrier, we would still conclude there was no potential for coverage in this case.[7]

---

[5] Stuchbery also relies on *Nassau Ins. v. Jo-Jo Cab* (N.Y.Sup.Ct. 1980) 102 Misc.2d 455 [423 N.Y.S.2d 813]; *Roe v. Lawn* (1994) 418 Mass. 66 [634 N.E.2d 117]; and *Huntington Cab Co. v. American Fidelity & Casualty Co.* (4th Cir. 1946) 155 F.2d 117.

[6] It appears *Mironov* no longer contains a correct statement of New York law. (*Adams v. NYC Tr. Auth.* (1996) 88 N.Y.2d 116 [643 N.Y.S.2d 511, 666 N.E.2d 216].)

[7] Having reached our conclusion that there was no potential for coverage under Redland's policy, we need not address Stuchbery's assertion that its automobile and molestation exclusions apply to exclude coverage, and Redland was therefore solely responsible for defending and indemnifying M & M and Tehrani. Further, we need not address Redland's claim that even if there was a potential for coverage under its policy, it should be required to reimburse Stuchbery only for its portion of the costs incurred after M & M and Tehrani notified Redland of the Underlying Action and tendered its defense and indemnity to Redland. We also need not address Stuchbery's arguments that M & M was liable for the victim's injuries because of the doctrine of respondeat superior and because, as a common carrier, its duty to the victim did not end until it safely transported the victim to the teen shelter, as these

## DISPOSITION

The judgment is affirmed. Respondent shall recover its costs on appeal.

Gemello, J., and Needham, J., concurred.

---

contentions relate to M & M's potential for *liability* and are immaterial to whether there was a potential for *coverage* under Redland's business automobile insurance policy.