[No. F021542. Fifth Dist. May 31, 1995.]

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,
Plaintiff and Respondent, v.
VUE PAO YANG, Defendant and Appellant.

**COUNSEL**

Anthony J. DeLellis for Defendant and Appellant.

Stammer, McKnight, Barnum & Bailey and James N. Hays for Plaintiff and Respondent.

OPINION

ARDAIZ, P. J.—Appellant Vue Pao Yang was insured by respondent State Farm Mutual Automobile Insurance Company. State Farm brought a declaratory relief action against Yang and sought an adjudication that Yang was not covered by the "Uninsured Motor Vehicle" and "Medical Payments" coverages of his State Farm automobile insurance policy for damages he suffered as a result of being shot by a gunman who fired from a car and then sped away. Yang had been standing near his apartment at the time of the shooting. The trial court found no coverage and entered judgment in favor of State Farm.

FACTS

The facts of the case are not in dispute. The parties agreed that the facts were those testified to by Yang at his deposition and as set forth in a police report of the incident.

The incident occurred on December 27, 1991. On that day Yang, who was 21 years old, had attended a Hmong New Year celebration at the Fresno County fairgrounds. He and his brother-in-law had driven to the fairgrounds at about 1 p.m. in Yang's 1983 Toyota Celica, the car insured by Yang's State Farm automobile insurance policy. Yang was the named insured on this policy. The policy had "Uninsured Motor Vehicle" liability limits of $25,000 per person per accident, up to $50,000 per accident, and "Medical Payments" liability limits of $5,000 per person.

There was a fight between some "groups" at the celebration, but Yang testified that the fight had occurred before he and his brother-in-law had arrived at the fairgrounds. He also stated that his cousin, Her Pao Moua, was "a friend of" one or more of the people who had been involved in the fight.

Yang later left the fairgrounds, but not with his brother-in-law and not in his 1983 Toyota Celica. He went home from the fairgrounds with his "cousin's friends." Yang's brother-in-law used Yang's 1983 Toyota Celica to take one of the brother-in-law's children to a doctor's appointment.

Yang arrived home about 4 p.m. He was outside of his apartment and in the apartment's parking lot with a group of individuals which included his cousin Moua and his cousin's brother. A light brown Chevrolet drove up. Yang saw two people in the Chevrolet, but was later told by others that they had seen three people in the Chevrolet. Moua went up to the Chevrolet "to ask what they—what do they want—what they wanted." The front seat

passenger then "took the gun out and shot at us." The passenger "was inside of the car with the car window open, and he shot from the inside."

The Chevrolet's engine never stopped. One of the first four shots struck Yang in the left lower leg. The Chevrolet then started to leave and "when they were going, then, they shot around with many shots." Moua was struck by two of the bullets. Neither the occupants nor the owner of the Chevrolet was ever identified.

Yang's claim with State Farm for "Uninsured Motor Vehicle" and "Medical Payments" coverages resulted in this declaratory relief action being filed by State Farm.

### APPELLANT'S CONTENTIONS

Yang contended in the trial court and again contends on this appeal that he is covered under his "Uninsured Motor Vehicle" coverage because he has satisfied the policy's requirements that his injury must be caused by an accident "arising out of the . . . use of" the uninsured motor vehicle and that the uninsured motor vehicle must be a land motor vehicle which "strikes . . . the insured."

He further contends that he is covered under his "Medical Payments" coverage because he has satisfied the policy's requirement that the insured sustain bodily injury "through being *struck* as a *pedestrian* by a motor vehicle or trailer."

### I.

### *Uninsured Motor Vehicle Coverage*

We first address Yang's contention that he has satisfied the policy's "Uninsured Motor Vehicle" coverage requirement that there be "a 'hit-and-run' land motor vehicle . . . which strikes . . . the insured." He contends that being struck by a bullet fired from the Chevrolet satisfies this requirement. We disagree.

Insurance Code[1] section 11580.2, subdivision (a) requires all California automobile insurance policies to provide uninsured motorist coverage unless the insured expressly agrees to waive or "delete" the coverage. The purpose of the uninsured motorist law (§ 11580.2) was to attempt to broaden the protection of innocent drivers against losses caused by negligent and

---

[1]All statutory references hereafter are to the Insurance Code unless otherwise indicated.

financially irresponsible motorists. (*Inter-Insurance Exchange* v. *Lopez* (1965) 238 Cal.App.2d 441, 443 [47 Cal.Rptr. 834].)

Section 11580.2, subdivision (b)(1) of the statute permits an insurer to require, as a condition of payment of an insured's claim for bodily injury caused by an uninsured motorist, that the insured's bodily injury "has arisen out of physical contact of the automobile with the insured or with an automobile which the insured is occupying."

 The "Uninsured Motor Vehicle" coverage (also referred to as Coverage U) in Yang's State Farm automobile insurance policy provided:

"We will pay damages for *bodily injury* an *insured* is legally entitled to collect from the owner or driver of an *uninsured motor vehicle*. The *bodily injury* must be caused by accident arising out of the operation, maintenance or use of an *uninsured motor vehicle*."

The policy's definition of "uninsured motor vehicle" provided in relevant part:

"*Uninsured Motor Vehicle* under coverage U - means

". . . . . . . . . . . . . . . . . . . . . . .

"3. a 'hit-and-run' land motor vehicle whose owner or driver remains unknown and which strikes:

"a. the *insured* or

"b. the vehicle the *insured* is *occupying* and causes *bodily injury* to the *insured*."

Although the language of the policy ("land motor vehicle . . . which strikes: . . . the *insured*") and the language of section 11580.2, subdivision (b)(1) of the statute ("physical contact of the automobile with the insured") are not identical, there is no contention by State Farm that its policy's use of the word "strikes" requires anything more than is required by the statute's use of the term "physical contact." Nor could the policy require the insured to make a greater showing than that required by the statute. The provisions of the uninsured motorist law " 'are a part of every policy of insurance to which it is applicable.' " (*Hartford Fire Ins. Co.* v. *Macri* (1992) 4 Cal.4th 318, 324 [14 Cal.Rptr.2d 813, 842 P.2d 112]; *Travelers Indem. Co.* v. *Kowalski* (1965) 233 Cal.App.2d 607, 609 [43 Cal.Rptr. 843].)

The original uninsured motorist law was enacted in 1959. (Stats. 1959, ch. 817, § 1, p. 2835.) The original statute did not permit the insurer to require that the insured's bodily injury must have "arisen out of physical contact of the automobile with the insured or with an automobile which the insured is occupying." The present subdivision (b)(1) of section 11580.2 was part of a 1961 amendment which permitted an insurer to require an insured to meet three new requirements in order to receive uninsured motorist benefits. One was the aforementioned "physical contact" requirement of subdivision (b)(1) (§ 11580.2). The second was that the accident must have been reported to the police within 24 hours. The third was that the insured must have given the insurer a "statement under oath" about the accident within 30 days. (§ 11580.2, subd. (b)(2); Stats. 1961, ch. 1189, § 2, p. 2921.) The 1961 amendments were enacted in an attempt to reduce fraudulent claims for uninsured motorist benefits.

"These amendments . . . were designed to curb fraud, collusion, and other abuses arising from claims that phantom cars had caused accidents which, in fact, had resulted solely from the carelessness of the insured. For example, a driver who fell asleep and hit a telephone pole might claim he had swerved off the road to avoid being hit by an unidentified vehicle. The provision requiring physical contact with the unknown vehicle was added to the statute in order to eliminate such fictitious claims." (*Inter-Insurance Exchange* v. *Lopez, supra*, 238 Cal.App.2d at p. 443.)

 ·Yang's contention appears to be that by having physical contact with a moving object (in this case the bullet) which emanated from the Chevrolet, he has satisfied the statutory requirement of "physical contact of the automobile with the insured." He contends that case law interpretation of section 11580.2, subdivision (b)(1) "physical contact" provision requires such a conclusion. We disagree.

Appellant Yang relies primarily on *Pham* v. *Allstate Ins. Co.* (1988) 206 Cal.App.3d 1193 [254 Cal.Rptr. 152]. Before we explain why *Pham* does not call for the interpretation urged by Yang, we first briefly review earlier case law interpretations of section 11580.2, subdivision (b)(1).

In *Inter-Insurance Exchange* v. *Lopez, supra*, 238 Cal.App.2d 441 (hereinafter *Lopez*), car X hit car B and propelled car B into car C. Car X then fled the scene. The court concluded that "[i]n our view a direct application of force, as by Car X striking Car B and forcing it to hit Car C, qualifies as physical contact within the meaning of the statute." (*Id.* at p. 446.) "We hold that where an unknown vehicle has struck a second vehicle and caused it to strike the insured vehicle, there is physical contact between the unknown

vehicle and the insured vehicle within the meaning of the uninsured motorist endorsement." (*Ibid.*)

In *Page* v. *Insurance Co. of North America* (1969) 3 Cal.App.3d 121 [83 Cal.Rptr. 44], the plaintiff's car and "Car Two" were both traveling in the same direction on a highway. The plaintiff swerved, allegedly to avoid an oncoming "Car Three" that had crossed the center line of the highway. The plaintiff's car struck "Car Two." There was no physical contact between the plaintiff's car and "Car Three." This was a classic example of the type of uninsured motorist claim at which subdivision (b)(1) was directed, and the court so noted. The *Page* court stated: " 'If the physical contact requirement of the statute could be satisfied by merely showing that the hit-and-run vehicle was the proximate cause of the accident, then this provision would be largely written out of the statute. We are unwilling to do this, for the protection against phantom-car frauds would be diluted and the door re-opened to the abuses found to have arisen prior to the 1961 amendments.' " (*Page* v. *Insurance Co. of North America, supra,* 3 Cal.App.3d at p. 131, quoting *Lopez, supra,* 238 Cal.App.2d at p. 444.) The *Page* court also found the plaintiff's attempt to amend his complaint to allege that the oncoming car "threw up dust and rocks" which struck the plaintiff's car would not help him because there was no allegation that his bodily injury arose out of the dust and rocks contacting his car. (*Page, supra,* 3 Cal.App.3d at p. 131.) Rather, the plaintiff's injury arose because he swerved to avoid "Car Three" itself and struck "Car Two." The end result was the same regardless of whether "Car Three" did or did not throw up dust and rocks.

The facts in *Orpustan* v. *State Farm Mut. Auto. Ins. Co.* (1972) 7 Cal.3d 988 [103 Cal.Rptr. 919, 500 P.2d 1119] were much like those alleged by the plaintiff in *Page.* In *Orpustan* there was no dispute that the plaintiff swerved in order to avoid hitting a car identified only as a "Rambler." (7 Cal.3d at p. 990.) The plaintiff's truck did not make physical contact with the Rambler, but the plaintiff's truck went off the highway and plaintiff was injured. When the plaintiff sought arbitration with the insurer under an arbitration clause in his insurance policy, the insurer refused to arbitrate. The insurer took the position that whether there was " 'physical contact of such automobile with the insured or with an automobile which the insured is occupying' " was a legal question to be decided by a court, and that until a court made such a finding the insured was not entitled to arbitration. The policy provided that " 'whether the insured shall be legally entitled to recover damages, and if so entitled, the amount thereof, shall be made by agreement between the insured and the insurer or, in the event of disagreement, by arbitration.' " (*Ibid.*) The court concluded that the insured's dispute with the insurer was subject to arbitration. The court then, at the request of the

parties, discussed the meaning of section 11580.2, subdivision (b)(1) of the statute. Although the court's discussion did not expressly and explicitly say the insured would lose the arbitration, the court's discussion of subdivision (b)(1) left no doubt the insured's success in obtaining arbitration was a Pyrrhic victory, and that the insured would lose the ensuing arbitration.

"Contingent upon reaching this conclusion as to the propriety of arbitration for settlement of the parties' entire dispute, the parties have requested this court to consider the import of the 'physical contact' requirement in relation to the insurer's liability. As above stated, the accident occurred when plaintiff swerved his truck to avoid hitting the unidentified 'Rambler,' and indisputably there was no actual physical contact between the two vehicles. Plaintiff maintains, however, that this precise factual situation should not preclude recovery under the uninsured motorist coverage of his policy. He notes that the 'physical contact' requirement of the statute was adopted to 'curb fraud, collusion, and other abuses arising from claims that phantom cars had caused accidents which, in fact, had resulted solely from the carelessness of the insured. For example, a driver who fell asleep and hit a telephone pole might claim he had swerved off the road to avoid being hit by an unidentified vehicle. The provision requiring physical contact with the unknown vehicle was added to the statute in order to eliminate such fictitious claims.' (*Inter-Insurance Exchange* v. *Lopez*, 238 Cal.App.2d 441, 443 [47 Cal.Rptr. 834].) . . .

". . . if the physical contact requirement could be satisfied by merely showing that the hit-and-run vehicle was the proximate cause of the accident, this provision would be largely written out of the statute. Thereby, the protection against phantom-car frauds would be diluted and the door reopened to the abuses which motivated the Legislature's imposition of the 'physical contact' requirement to come within the contemplated coverage of the statute.

"The right to recover for the negligence of an unknown motorist is determined, under the plain terms of the statute, by whether or not the 'bodily injury' was caused by 'physical contact.' Nowhere does the statute state or imply that the physical contact requirement may be met by proof that there was in fact an unknown driver and vehicle nor by proof that the unknown vehicle caused the accident. Contact means 'union or junction of body surfaces; a touching or meeting . . . .' (Webster's New Internat. Dict. (3d ed. 1961)), a direct application of force which would satisfy the requirement of bodily contact as distinguished from some obvious and visible secondary cause bringing about the injury. Such is the meaning attributed by *Inter-Insurance Exchange* v. *Lopez, supra*, 238 Cal.App.2d 441. In the final

analysis, plaintiff's case rests wholly on the premise that the Rambler was the proximate cause of the accident and plaintiff's injuries, but that is of no consequence in the absence of physical contact as a basis for his claim.

"Plaintiff insists that since the statute was designed to eliminate fraud, and under the undisputed facts there clearly is no fraudulent claim, the protective purpose of uninsured motorist coverage in providing compensation for persons injured on the highway through no fault of their own is frustrated. Such argument, however, runs counter to the statute's plain language. 'What the Legislature meant by what it said must be determined from the language used in relation to the subject matter and not from speculation as to what was in the minds of the individual legislators.' (*Krych* v. *Mercury Cas. Co.*, 16 Cal.App.3d 875, 879 [94 Cal.Rptr. 592].) The statute makes proof of 'physical contact' a condition precedent in every case for the recovery of damages caused by an unknown vehicle. There are no exceptions. If it is advisable that the statute be changed, the solution lies within the province of the Legislature. The court has no right to legislate the proviso from the statute or emasculate its application under the guise of judicial interpretation." (*Orpustan* v. *State Farm Mut. Auto. Ins. Co.*, *supra*, 7 Cal.3d at pp. 992-994.)

Several years later section 11580.2, subdivision (b)(1), the uninsured motorist statute, was again examined in *Barnes* v. *Nationwide Mutual Ins. Co.* (1986) 186 Cal.App.3d 541 [230 Cal.Rptr. 800]. In *Barnes* the plaintiff was driving on a freeway when her car collided with a "box of dinette chairs that was lying in the road." (*Id.* at p. 542.) She lost control of her car, smashed into a center guardrail and was injured. The court, using language which originated in *Lopez* and was reiterated in *Orpustan*, held that there was no uninsured motorist coverage because there was no " 'direct application of force' " from an uninsured vehicle. (*Id.* at p. 543.) The court stated:

"*Orpustan* discussed the meaning of 'physical contact,' defining it as 'a direct application of force.' [Citation.] *Orpustan* used as an illustration of its definition *Inter-Insurance Exchange* v. *Lopez* (1965) 238 Cal.App.2d 441, 445-446 [47 Cal.Rptr. 834], a case where the physical contact was somewhat attenuated. (*Ibid.*) In *Lopez*, the insured's car was hit by another car, which had been hit by the uninsured car. Even though the uninsured's car did not come into contact with the insured's car, *Orpustan* noted that there was some physical contact in *Lopez*, a direct application of force by the uninsured vehicle. (*Ibid.*)

"Obviously, as physical contact has been defined by the cases, Ms. Barnes's case does not involve physical contact between hers and the uninsured's vehicle. There was not a direct application of force from the

uninsured vehicle. The box did not fall from the uninsured vehicle onto Ms. Barnes's car; it was lying in the road when Ms. Barnes hit it. Our courts have already considered and rejected the claim Ms. Barnes makes here, that because the box was a link in an otherwise unbroken chain of physical contact between the uninsured vehicle and her own, sufficient physical contact occurred. (See *Orpustan* v. *State Farm Mut. Auto. Ins. Co.*, *supra*, 7 Cal.3d at p. 993.)

"Because no actual physical contact occurred between Ms. Barnes's and the uninsured's vehicle, we affirm the trial court's granting of summary judgment." (*Barnes* v. *Nationwide Mutual Ins. Co.*, *supra*, 186 Cal.App.3d at pp. 543-544.)

Two years later came *Pham* v. *Allstate Ins. Co.*, *supra*, 206 Cal.App.3d 1193, the case on which appellant Yang primarily relies. In *Pham*, the insured was traveling northbound and an unidentified dump truck was traveling southbound on the same road. As the vehicles passed each other, a rock fell off the truck, bounced on the highway and then penetrated the windshield of the northbound insured's car. The rock struck the insured and injured her. The policy provided uninsured motorist coverage when an uninsured vehicle "causes . . . *bodily injury* to an insured person by physical contact with the insured person or with a vehicle occupied by that person." (*Id.* at p. 1195.) The insured argued that the policy provided greater coverage than section 11580.2, subdivision (b)(1) because although the statute calls for physical contact "of the automobile" with the insured or with the insured's car, the policy's language should be construed to provide coverage whenever the uninsured vehicle "causes" bodily injury to the insured by physical contact *of anything* with the insured or with the insured's car.

The *Pham* court rejected the insured's argument that the policy language provided greater coverage than that called for by the statute. But just as in *Lopez*, *Orpustan* and *Barnes*, the *Pham* court concluded there would be coverage if the uninsured vehicle provided the direct application of force which caused another object to strike the insured's vehicle and injure the insured. In *Pham* that test was satisfied because the dump truck itself provided the force which propelled the movement of the rock. The court noted that another jurisdiction had found uninsured motorist coverage when an insured was injured by a detached part of the uninsured vehicle that had been propelled by the uninsured vehicle. (*Illinois Nat. Ins. Co.* v. *Palmer* (1983) 116 Ill.App.3d 1067 [72 Ill.Dec. 454, 452 N.E.2d 707] [lug nut flew off of unknown vehicle and struck insured's windshield].) Similarly, the requisite physical contact was found when a truck hit a brake drum lying in the road and propelled the brake drum into the insured's windshield.

(*Southern Farm Bur. Cas. Ins.* v. *Brewer* (Miss. 1987) 507 So.2d 369.) The *Pham* court stated: "We can discern no logical difference between an object struck and propelled by an unknown vehicle and an object falling from such vehicle." (*Pham* v. *Allstate Ins. Co., supra,* 206 Cal.App.3d at p. 1198, fn. omitted.)

When the principles of the above described cases are applied to the facts of the present case, it is clear that Yang's injury did not arise out of physical contact of the unknown Chevrolet with Yang. His injury arose out of physical contact with the bullet which struck him. The bullet was not set in motion or propelled by the Chevrolet. Indeed, in this case the Chevrolet was not even moving when the bullet was fired. The bullet was propelled by the gun from which the bullet was fired. Even in a situation when a gun is fired from a moving car, however, the bullet is still propelled by the gun. Any movement of the car would generally be insignificant insofar as the propulsion of the bullet is concerned.

One published case on similar facts has reached the same result we reach in this case. In *Ford* v. *Monroe* (Mo.Ct.App. 1977) 559 S.W.2d 759, the plaintiff was a passenger in a Plymouth automobile. While the Plymouth was traveling about 40 miles per hour, a Ford automobile pulled up alongside the Plymouth. Two shots were fired from the Ford. The first shot broke the left door window of the Plymouth and struck the driver. The second shot passed through the broken window and struck the plaintiff. The cars did not collide. The plaintiff sought recovery under the Plymouth driver's uninsured motorist coverage. The plaintiff qualified as an "insured" under the Plymouth driver's policy. The policy defined an "uninsured automobile" as a hit-and-run automobile "which causes bodily injury to an insured arising out of physical contact of such automobile with the insured or with an automobile which the insured is occupying at the time of the accident." (*Id.* at p. 762.)

The court in *Ford* rejected the plaintiff's contention that being struck by the bullet constituted "physical contact of [the Ford] with the insured." The court pointed out that the policy required "physical contact by the uninsured automobile with either the plaintiff or the Plymouth" and that "[n]either bullet qualified as an uninsured automobile . . . ." (559 S.W.2d at p. 763.)

Appellant Yang relies heavily upon the final sentence of *Pham, supra,* which states that ". . . there is physical contact as required by the statute when either a part of a vehicle or an object which the vehicle is carrying strikes the insured or his vehicle." (206 Cal.App.3d at p. 1198.) He argues that because the bullet which struck him had been carried by the Chevrolet before the bullet reached his leg, he has satisfied the physical contact

requirement. We think it is clear, however, that *Pham*'s use of the phrase "an object which the vehicle is carrying" relates to the court's earlier discussion of an object that is carried by the uninsured or unknown vehicle and which then falls from that vehicle and strikes the insured or the insured's vehicle. The mere fact that a bullet was located in the uninsured car before it was fired from that car is not enough. There was no direct application of force by the Chevrolet to cause the bullet to reach Yang. Just as the insured driver's striking of the box of dinette chairs lying in the road in *Barnes* did not constitute physical contact of Mrs. Barnes's vehicle with the vehicle which had at an earlier time carried those chairs, Yang's contact with the bullet did not constitute physical contact with the Chevrolet that had previously carried that bullet. The unknown vehicle in *Barnes* did not propel the dinette chairs into Mrs. Barnes's car, and the Chevrolet in the present case did not propel the bullet into Mr. Yang.

Because Yang has not satisfied the "physical contact" requirement of section 11580.2, subdivision (b)(1), we need not and do not reach the question of whether his injuries were caused by an accident "arising out of the . . . use of" an uninsured motor vehicle.

## II.

### *Medical Payments Coverage*

Appellant Yang's "Medical Payments" coverage (also referred to in the policy as "Coverage C") provided in relevant part:

"We will pay medical expenses for *bodily injury* sustained by

"1.　a.　the first *person* named in the declarations;

　　　"b.　his or her *spouse*; and

　　　"c.　their *relatives*.

"These *persons* have to sustain the *bodily injury*:

　　　"a.　while they operate or *occupy* a vehicle covered under the liability section; or

　　　"b.　through being struck as a *pedestrian* by a motor vehicle or trailer.

"A *pedestrian* means a *person* not an occupant of a motor vehicle or trailer."

There is no dispute that Yang was the first person named in the declarations and that at the time he was shot he was a pedestrian. ■ Yang contends that when he was shot he was "struck . . . by a motor vehicle" within the meaning of the second clause "b." above, and that therefore he is entitled to have his medical expenses paid under his "Medical Payments" coverage. State Farm contends that he was struck by a bullet, not by the Chevrolet, and that therefore there is no coverage.

Appellant's argument that he was "struck" by the Chevrolet appears to be as follows. His "Uninsured Motor Vehicle" coverage required him to show that "a 'hit-and-run' land motor vehicle . . . strikes . . . the insured." He showed that he was struck by the Chevrolet, within the meaning of his "Uninsured Motor Vehicle" coverage, by showing that he was struck by a bullet fired from the Chevrolet. Because he showed that he was struck by the Chevrolet within the meaning of his "Uninsured Motor Vehicle" coverage, he has therefore also demonstrated that he was "struck" by the Chevrolet for purposes of his "Medical Payments" coverage.

The most obvious flaw in this argument is that its second step is faulty. As we explained in part I of this opinion, Yang failed to meet the "Uninsured Motor Vehicle" coverage requirement that there be a land motor vehicle "which strikes . . . the insured." Thus, even if the word "struck" in the "Medical Payments" provision carries the same meaning (though in past tense) as the word "strikes" in the "Uninsured Motor Vehicle" provision, as Yang contends, his argument fails.

Yang raises no other arguments to support his contention that he is entitled to "Medical Payments" coverage. Neither party calls our attention to any cases construing "medical payments" coverages in automobile insurance policies. In *Lemmons* v. *Prudential Property & Cas.* (Mo.App. 1994) 878 S.W.2d 853, the plaintiff was not injured when his car collided with another, but was injured in a subsequent physical altercation with the driver of the other car after both drivers had exited their vehicles. His automobile insurance "Medical Payments" coverage provided for payment of necessary medical services for injuries incurred "while occupying, or when struck by, a highway vehicle or trailer." The court concluded that although the plaintiff had been struck by the second driver's fist and also by a pipe wielded by the second driver, the plaintiff had not been struck by a highway vehicle and therefore there was no "Medical Payments" coverage. The plaintiff's injuries "were not sustained during a car collision." (*Id.* at pp. 858-859.)

Similarly, appellant Yang in the present case was struck by a bullet, but not by a "motor vehicle or trailer." The court did not err in finding no "Medical Payments" coverage.

The judgment is affirmed. Costs to respondent.

Vartabedian, J., and Thaxter, J., concurred.

A petition for a rehearing was denied June 26, 1995, and appellant's petition for review by the Supreme Court was denied August 31, 1995.