Filed 8/12/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| PROGRESSIVE CHOICE INSURANCE COMPANY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>CALIFORNIA STATE AUTOMOBILE ASSOCIATION INTER-INSURANCE BUREAU,<br><br>Defendant and Appellant. | B242429<br><br>(Los Angeles County Super. Ct. No. BC472603) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Maureen Duffy-Lewis, Judge. Affirmed.

Morton & Lulofs and William R. Morton for Defendant and Appellant.

Yocis & Cox and Stephen M. Smith for Plaintiff and Respondent.

_____

## INTRODUCTION

This case concerns the allocation of an Underinsured Motorist (UIM) loss between two automobile insurance companies. The insured was covered by automobile insurance policies issued by Progressive Choice Insurance Company (Progressive) and California State Automobile Association Inter-Insurance Bureau (CSAA). He was injured in an automobile accident caused by an underinsured motorist. After settling with the underinsured motorist, the insured claimed a $62,500 loss under the UIM provisions of both policies. Progressive paid the entire claim, and sought contribution from CSAA. Progressive contended that under Insurance Code section 11580.2, subdivision (d),[1] the UIM loss should be allocated on a pro-rata basis between the two companies. The trial court agreed, and granted summary judgment in favor of Progressive. CSAA contends the trial court erred, as under section 11580.2, subdivision (c)(2), its policy does not apply because the insured was covered by the Progressive policy; thus, the entire loss should be borne by Progressive. On appeal, Progressive contends CSAA may not rely on section 11580.2, subdivision (c)(2) because the CSAA policy lacked the necessary language to invoke that statutory exclusion. We agree. Absent such statutory exclusion, both insurance policies are implicated, and the mandatory pro-rata allocation of section 11580.2, subdivision (d) applies. Accordingly, we affirm the grant of summary judgment in favor of Progressive.

## STATEMENT OF THE FACTS

The parties stipulated to the following facts.

---

[1] All further statutory citations are to the Insurance Code, unless otherwise stated.

2

A. Underlying Claims

On March 27, 2006, Benjamin White was injured in a traffic collision, while riding as a passenger in a vehicle being operated by Scott A. Tortora. The party who caused the collision was underinsured. White was insured under two automobile insurance policies. The first policy, issued by Progressive to Tortora, insured the vehicle. It provided underinsured motorist bodily injury coverage with limits of $100,000 for each person. The second policy, issued by CSAA to Benjamin White as the named insured, provided underinsured motorist bodily injury coverage with limits of $50,000 for each person.

White settled with the at-fault driver's automobile insurance company for the policy limit of $25,000. White then made a claim for Underinsured Motorist benefits under the Progressive and CSAA policies. CSAA denied coverage. Progressive paid the sum of $62,500 to White. Progressive demanded that CSAA reimburse Progressive $20,833.33, the pro-rata share of the payment made to White based upon the applicable policy limits of the two policies. CSAA denied any obligation to contribute and reimburse Progressive, arguing that the Progressive policy constituted the sole source of underinsured motorist coverage to White.

B. Progressive Insurance Policy

The Progressive insurance policy provided underinsured motorist coverage under Part III (A) of the policy. It provided: "Subject to the Limits of Liability, if you pay a premium for Uninsured/Underinsured Motorist Bodily Injury Coverage, we will pay for damages, other than punitive or exemplary damages, which an insured person is entitled to recover from the owner or operator of an uninsured motor vehicle or underinsured motor vehicle because of bodily injury: [¶] 1. sustained by an insured person; [¶] 2. caused by accident; and [¶] 3. arising

3

out of the ownership, maintenance, or use of an uninsured motor vehicle or underinsured motor vehicle."

Under "Exclusions," the policy stated that "Coverage under this Part III(A) is not provided for bodily injury sustained by any person while using or occupying: . . . [¶] . . . [¶] 6. a motor vehicle, other than a covered vehicle, if the owner has insurance similar to that provided under this Part III(A)."

Part III(A) also included an "Other Insurance" provision. That provision stated: "If there is other applicable uninsured or underinsured motorist coverage, the damages which an insured person is entitled to recover under this Part III(A) shall be deemed not to exceed the highest limit of any applicable coverage. We will pay only our share of the damages. Our share is the proportion that our Limit of Liability bears to the total of all available coverage limits. Any insurance we provide shall be excess over any other uninsured or underinsured motorist coverage, except for bodily injury to you or a relative when occupying a covered vehicle."

C.     CSAA Insurance Policy

The CSAA insurance policy provided underinsured motorist coverage under Part IV of the policy.[2] Under "Coverage," the policy provided: "We will pay damages, other than punitive or exemplary damages, for bodily injury which an insured person is legally entitled to recover from the owner or operator of an uninsured motor vehicle. The bodily injury must be caused by accident and arise out of the ownership, maintenance or use of the uninsured motor vehicle."

The policy enumerated several exclusions from coverage. It provided: "This coverage does not apply to bodily injury sustained by an injured person:

_____

[2]     Although Part IV mentions only "uninsured motor vehicle," CSAA stipulated it also covered underinsured motorist claims.

4

"(1) while occupying a motor vehicle, other than an insured motor vehicle, owned by any insured person, or leased to any insured person, under a written contract for a period of six months or longer, or through being struck by such a motor vehicle;

"(2) if that person or the representative of that person, without our written consent, makes any settlement or prosecutes to judgment any action against any person who may be legally liable therefor;

"(3) while occupying your auto when used to carry persons or property for a charge. . . .

"Uninsured Motorist Coverage shall not apply to the benefit of any insurer or self-insurer under any workers' compensation or disability benefits law or any similar law or to the direct benefit of the United States, any state or any political subdivision thereof."

The policy further provided that the coverage limit was "[t]he limits of liability shown in the Declarations." However, "[i]f a claim is made for bodily injury caused by an underinsured motor vehicle, we will pay only after the limits of bodily injury liability policies applicable to all insured motor vehicles causing the injury have been exhausted by payment of judgments and settlements, and proof of such payment is submitted to us."

Finally, the policy had an "Other Insurance" provision, which provided:

"With respect to bodily injury to an insured person occupying a motor vehicle not owned by you, the coverage under this Part applies only as excess insurance over any similar insurance available to such insured person and covering such automobile as primary insurance. In this situation this coverage will apply only in the amount by which the limits of liability for this coverage exceeds the limits of liability of such other insurance.

"If there is other similar insurance on a loss covered by this Part, we will pay our proportionate share as our limit of liability bears to the total limits of all applicable similar insurance. But, any insurance for a vehicle you do not own is excess over any applicable similar insurance."

5

## PROCEEDINGS BELOW

On November 9, 2010, Progressive filed an action for contribution in superior court. In the complaint, Progressive sought reimbursement from CSAA on a pro-rata basis. CSAA filed an answer, generally denying the allegations and asserting that the Progressive policy provided the sole coverage for the insured's UIM claim.

Progressive and CSAA filed competing motions for summary judgment. CSAA contended that under section 11580.2, subdivision (c)(2), its policy provided no UIM coverage to White because the Progressive policy already provided "similar" UIM coverage. Progressive contended it did not provide "similar" UIM coverage because the amount of coverage was different; it provided $100,000 per person, whereas CSAA provided only $50,000 per person. The trial court granted Progressive's motion for summary judgment. On May 29, 2012, judgment was entered in the amount of $20,833.33. CSAA timely appealed.

## DISCUSSION

On appeal, Progressive affirmatively disavows the argument that prevailed below -- that section 11580.2, subdivision (c)(2) was inapplicable because the Progressive policy was not "similar" to the CSAA policy. Rather, Progressive now contends section 11580.2, subdivision (c)(2) is inapplicable because CSAA failed to include the necessary language to invoke that statutory exclusion in its policy. CSAA concedes that Progressive may change its argument on appeal to assert an issue of law based on undisputed facts. Accordingly, we address only the issue presented to us: whether section 11580.2, subdivision (c)(2) operates to exclude coverage as a matter of law.

6

A.     Statutory UIM Coverage Scheme

Section 11580.2, the uninsured motorist law, creates a statutory scheme to protect "innocent drivers against losses caused by negligent and financially irresponsible motorists." (*State Farm Mut. Auto. Ins. Co. v. Yang* (1995) 35 Cal.App.4th 563, 567-568.)

Section 11580.2, subdivision (a)(1) provides in pertinent part:  "No policy of bodily injury liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle . . . shall be issued . . . in this state to the owner or operator of a motor vehicle . . . unless the policy contains, or has added to it by endorsement, a provision with coverage limits at least equal to the limits specified in subdivision (m) and in no case less than the financial responsibility requirements specified in Section 16056 of the Vehicle Code insuring the insured, the insured's heirs or legal representative for all sums within the limits that he, she, or they, as the case may be, shall be legally entitled to recover as damages for bodily injury or wrongful death from the owner or operator of an uninsured motor vehicle."

Section 11580.2, subdivision (m) provides that the minimum UIM bodily injury coverage limit is $30,000 per person.  Vehicle Code section 16056 provides that the minimum liability coverage is $15,000 per person.  Section 11580.2, subdivision (b) defines "uninsured motor vehicle" to include "an 'underinsured motor vehicle' as that term is defined in [section 11580.2,] subdivision (p)."  That subdivision defines an "[u]nderinsured motor vehicle" as "a motor vehicle that is an insured motor vehicle but insured for an amount that is less than the uninsured motorist limits carried on the motor vehicle of the injured person." (§ 11580.2,

7

subd. (p)(2).)[3] Thus, section 11580.2, subdivision (a)(1) requires that all policies for automobile insurance issued in this state provide underinsured motorist coverage with limits of at least $30,000 per person.

Section 11580.2, subdivision (c) limits the UIM coverage provided in section 11580.2, subdivision (a)(1). It provides in pertinent part: "The insurance coverage provided for in this section does not apply either as primary or as excess coverage: [¶] . . . [¶]

"(2) To bodily injury of the insured while in or upon or while entering into or alighting from a motor vehicle other than the described motor vehicle if the owner thereof has insurance similar to that provided in this section.

"(3) To bodily injury of the insured with respect to which the insured or his or her representative shall, without the written consent of the insurer, make any settlement with or prosecute to judgment any action against any person who may be legally liable therefor.

"(4) In any instance where it would inure directly or indirectly to the benefit of any workers' compensation carrier . . . . [¶] . . . [¶]

"(6) To bodily injury of the insured while occupying a motor vehicle owned by an insured or leased to an insured under a written contract for a period of six months or longer, unless the occupied vehicle is an insured motor vehicle. . . .

"(7) To bodily injury of the insured when struck by a vehicle owned by an insured . . . .

"(8) To bodily injury of the insured while occupying a motor vehicle rented or leased to the insured for public or livery purposes." (§ 11580.2, subd. (c).)

---

[3] CSAA included a similar definition for "underinsured motor vehicle" in its policy.

The statutory exclusion at issue is section 11580.2, subdivision (c)(2). That statutory exclusion is "commonly known as the 'excess insurance clause,' and is partially designed to prevent double recovery in situations where more than one policy's uninsured motorist protection is involved. It also attempts to [e]nsure the carriers that no company will have to pay more than its fair share of the loss." (*California State Auto. Assn. Inter-Ins. Bureau v. Huddleston* (1977) 68 Cal.App.3d 1061, 1068 [where victims have not been made whole by an insurance policy covering the vehicle involved in the accident, they may avail themselves of the UIM coverage in their own insurance policy].)

The fair allocation of UIM losses was further addressed by the Legislature when it enacted section 11580.2, subdivision (d). That statutory provision states: "Subject to paragraph (2) of subdivision (c), the policy or endorsement may provide that if the insured has insurance available to the insured under more than one uninsured motorist coverage provision, any damages shall not be deemed to exceed the higher of the applicable limits of the respective coverages, and the damages shall be prorated between the applicable coverages as the limits of each coverage bear to the total of the limits." (§ 11580.2, subd. (d).)

"Section 11580.2, subdivision (d), is commonly referred to as an 'antistacking clause.'" (*Allstate Ins. Co. v. Mercury Ins. Co.* (2007) 154 Cal.App.4th 1253, 1259 (*Allstate*).) In *Prieto v. State Farm Mut. Automobile Ins. Co.* (1969) 268 Cal.App.2d 891 (*Prieto*), the appellate court held that where multiple automobile insurance policies are applicable, an insurance policy containing the pro-rata provision permitted by section 11580.2, subdivision (d) takes precedence over an insurance policy providing that it is excess coverage. (*Id.* at pp. 893-894; *Allstate*, *supra*, at p. 1260 ["Where the proration provision is included in a [UIM] insurance policy, it must be given effect."]; *Planet Ins. Co. v.*

9

*United Services Automobile Assn*. (1994) 23 Cal.App.4th 1256, 1262 (*Planet*) [where two automobile insurance policies provide uninsured motorist coverage, and one policy contains an excess coverage clause in its "other insurance" provisions while the other contains a statutory proration clause, the proration clause takes precedence].)

B.      CSAA UIM Coverage

It is well established that the rights of an insured under the uninsured motorist provisions of an automobile liability policy are to be determined by the terms of the policy, provided it grants benefits at least equal to those required by the terms of section 11580.2.  (*Darrah v. California State Automobile Assn.* (1968) 259 Cal.App.2d 243, 246 (*Darrah*).)  Here, as stipulated by the parties, the CSAA policy provided UIM coverage with limits of $50,000 per person.  This is in excess of the default UIM coverage required by section 11580.2, subdivision (a)(1).

The CSAA policy expressly excludes UIM coverage in several situations. Under "EXCLUSIONS," the policy provides that there will be no UIM coverage: (1) where the insured occupies a motor vehicle owned by an insured person or leased by an insured person under a written contract for a period of six months or longer; (2) where the insured is struck by such a vehicle; (3) where the insured settled with the negligent party without the consent of the insurer; (4) where the insured occupies a vehicle used to carry person or property for a charge; and (5) where any insurer or self-insurer would benefit under worker's compensation or disability benefits laws.  These contractual exclusions are substantially similar to several statutory exclusions set forth in section 11580.2, subdivision (c).  (See §§ 11580.2, subd. (c)(3) [unconsented settlement or judgment], (4) [worker's compensation], (6) [motor vehicle owned or leased under a written contract for a

period of six months or longer], (7) [struck by such a vehicle], (8) [motor vehicle rented or leased for public or livery purposes].)

Notably, the statutory exclusion of section 11580.2, subdivision (c)(2) is not among those listed in the CSAA policy's exclusions. The CSAA policy does not exclude UIM coverage where an insured suffers bodily injury "while in or upon or while entering into or alighting from a motor vehicle other than the . . . motor vehicle [described as covered under this section] if the owner thereof has insurance similar to that provided in this section." (§ 11580.2, subd. (c)(2).)

CSAA contends the "Other Insurance" provision of its policy expressly incorporates section 11580.2, subdivision (c)(2). That provision provides: "With respect to bodily injury to an insured person occupying a motor vehicle not owned by you, the coverage under this Part applies only as excess insurance over any similar insurance available to such insured person and covering such automobile as primary insurance. . . . [¶] If there is other similar insurance on a loss covered by this Part, we will pay our proportionate share as our limit of liability bears to the total limits of all applicable similar insurance. But, any insurance for a vehicle you do not own is excess over any applicable similar insurance."

The "Other Insurance" provision, however, does not contain language substantially similar to that set forth in section 11580.2, subdivision (c)(2). The contractual provision states that where an insured is injured while occupying a vehicle belonging to a third party, the policy will provide UIM coverage, although it will be as excess insurance. In contrast, the statutory exclusion of section 11580.2, subdivision (c)(2) states that there will be no UIM coverage at all. We note that when CSAA has wished to include the statutory exclusion provided by section 11580.2, subdivision (c)(2), it has done so. In the 1968 case of *Darrah*, the appellate court noted that CSAA had issued an automobile policy containing the

11

following exclusionary language: "'With respect to bodily injury sustained by any insured occupying any automobile, other than one owned by the named insured, the insurance hereunder shall not apply if the owner of such automobile has insurance similar to that provided for herein.'" (*Darrah*, *supra*, 259 Cal.App.2d at p. 246 [holding UIM coverage in CSAA policy did not apply because of exclusionary language in policy].) Thus, the "Other Insurance" clause is insufficient to invoke the statutory exclusion of section 11580.2, subdivision (c)(2).

CSAA contends it need not expressly incorporate the language of section 11580.2, subdivision (c)(2) in order to exclude the UIM coverage that it provided to the insured. This argument was rejected in *Utah Property & Casualty Ins. etc. Assn. v. United Services Auto. Assn.* (1991) 230 Cal.App.3d 1010 (*Utah Property*) and *Lumberman's Mut. Cas. Co. v. Wyman* (1976) 64 Cal.App.3d 252. Those cases held that where an insurer provides greater coverage than required under the law, the insurer may not rely on statutory restrictions on coverage that were not expressly incorporated into the insurance policy.

In *Utah Property*, the insurer provided UIM coverage where the at-fault driver's motor vehicle was insured at the time of the accident, but the at-fault driver's insurer became insolvent. (*Utah Property, supra*, 230 Cal.App.3d at p. 1015.) Section 11580.2, subdivision (b)(2) stated that if the insurer became insolvent within one year of the accident, the UIM coverage provided by section 11580.2 would apply. The insurer contended that this one-year limitation was incorporated into its policy as a matter of law. The court disagreed. (*Id*. at p. 1016.) The court noted the well-settled legal principle that an insurance policy should be read as a layperson would read it. (*Id*. at p. 1015.) It determined that "[b]ecause no time limitation is placed upon insolvency, a layperson reading the policy would have no reason to suspect that the insolvency would have to occur

12

within a year of the accident." (*Ibid*.) Accordingly, "the one-year limitation in subdivision (b)(2) was not incorporated in the subject insurance policy so as to limit coverage otherwise afforded by the policy." (*Id*. at p. 1021.)

In *Lumberman's Mut. Cas. Co. v. Wyman*, the insurer provided the uninsured motorist coverage required under section 11580.2. (*Lumberman's Mut. Cas. Co. v. Wyman*, *supra*, 64 Cal.App.3d at p. 256.) Under "Exclusions," the insurer listed three, including where the "insured, his legal representative or any person entitled to payment under this coverage shall, without written consent of the company, make any settlement with any person or organization who may be legally liable therefor." (*Id*. at p. 257.) The court noted that this contractual exclusion essentially repeated the statutory language in section 11580.2, subd. (c)(3), except that the words "'or prosecute to judgment any action'" were omitted from the policy language. (*Ibid*.) The insured entered into an unconsented judgment, and then made a claim under the UIM policy. (*Id*. at p. 254.) The insurer denied coverage, arguing that "subdivision (c)(3) of section 11580.2 . . . should be read into the contract as a matter of law and that it controls the present case." (*Id*. at p. 257.) The court disagreed. It held that "the plain language of the limitation in question here refers only to an exclusion in the event of unconsented settlement; there is no mention of a consent condition to obtaining judgment, although it is clear that such a limitation is permissible under paragraph (3) of subdivision (c) of section 11580.2 . . . . [¶] To the extent that there may be any ambiguity in the terms of the policy, that ambiguity must be resolved against respondent insurer. [Citation.] In the absence of a specific provision in the policy prohibiting the insured from prosecuting to judgment any action without the written consent of the insurer, respondent is not entitled to rely on subdivision (c)(3) of section 11580.2 of the Insurance Code." (*Id*. at pp. 259-260.)

13

Here, CSAA expressly provided UIM coverage in an amount in excess of the default coverage limits required by section 11580.2. Thus, it cannot rely upon the statutory exclusions that would apply to that default coverage. (Cf. *Samson v. Transamerica Ins. Co*. (1981) 30 Cal.3d 220, 231 [where insurance contract does not have mandated coverage, the statutory provisions governing the mandated coverage are incorporated into the insurance contract by law].)

As noted, CSAA's policy set forth several exclusions that were substantially similar to the statutory exclusions provided in section 11580.2, subdivision (c). None, however, mirrored the language of subdivision (c)(2). Despite having previously drafted policies with language sufficient to invoke the statutory exclusion of subdivision (c)(2), see *Darrah*, *supra*, 259 Cal.App.2d at p. 246, CSAA neither included such language nor referred to the statutory exclusions in section 11580.2, subdivision (c). Thus, a layperson reading the policy would have no reason to suspect that any exclusion other than those listed in the CSAA policy would apply. (See *Utah Property*, *supra*, 230 Cal.App.3d at p. 1021 ["Laypersons cannot be expected to know of statutory limitations or exclusions on coverage not contained in their insurance policies."].)

Finally, we find no reason to infer the Legislature intended section 11580.2, subdivision (c)(2) to apply in this situation. (*Interinsurance Exchange v. Marquez* (1981) 116 Cal.App.3d 652, 656 ["In interpreting the statute then it must be given a reasonable construction according to the Legislature's real or apparent intention. [Citation.]"].) As previously noted, section 11580.2, subdivision (c)(2) was partially designed to prevent double recovery. (*California State Auto. Assn. Inter-Ins. Bureau v. Huddleston*, *supra*, 68 Cal.App.3d at p. 1068.) Here, there is no double recovery. In addition, although section 11580.2, subdivision (c)(2) does not expressly require that it be included in an automobile insurance policy in order to

14

apply, neither does it prohibit an insurer from forfeiting the statutory exclusion. (See *Utah Property*, *supra*, 230 Cal.App.3d at p. 1019 ["We have been cited no California case, nor are we aware of any, holding that statutory provisions may be incorporated in an insurance policy so as to limit coverage otherwise provided by the policy."].) CSAA provided more than the minimally required UIM coverage. It elected to incorporate certain statutory exclusions, but not the one set forth in section 11580.2, subdivision (c)(2). Having chosen not to include such exclusionary language, it cannot now invoke the statutory exclusion.

Absent the statutory exclusion set forth in section 11580.2, subdivision (c)(2), both the CSAA and Progressive policies are implicated. Although the CSAA policy's "Other Insurance" clause contains an excess coverage provision, CSAA may not rely on that provision because the Progressive policy has a pro-rata provision. As explained above, under section 11580.2, subdivision (d), the pro-rata provision in the Progressive policy takes precedence over the excess coverage provision in the CSAA policy. (See *Prieto*, *supra*, 268 Cal.App.4th at pp. 893-894 [insurance policy containing the pro-rata provision permitted by section 11580.2, subdivision (d) takes precedence over an insurance policy providing that it is excess coverage]; *Planet*, *supra*, 23 Cal.App.4th at p. 1262 [same].) Thus, the UIM loss must be allocated on a pro-rata basis between Progressive and CSAA.

## DISPOSITION

The judgment is affirmed.  Costs are awarded to respondent.

**CERTIFIED FOR PUBLICATION.**


MANELLA, J.


We concur:



EPSTEIN, P. J.




WILLHITE, J.

16