Filed 12/16/13  Smith v. Fireman's Fund Ins. Co. CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| GREGORY SMITH, | B246288 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC445942) |
| v. | |
| FIREMAN'S FUND INSURANCE COMPANY, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Charles F. Palmer, Judge.  Affirmed.

Nelson & Natale and Silvio Natale for Plaintiff and Appellant.

Murchinson & Cumming, Edmund G. Farrell, Guy R. Gruppie and Eric P. Weiss for Defendant and Respondent.

_____

Gregory Smith was seriously injured in a drive-by shooting while riding in the front passenger seat of a vehicle insured by Fireman's Fund Insurance Company. After Fireman's Fund denied his claim for uninsured motorists benefits under the vehicle owner's automobile liability insurance policy, Smith petitioned to compel arbitration of the dispute. The trial court denied the petition on the ground there was no physical contact between the vehicle in which Smith was riding and the shooter's car as required by Insurance Code section 11580.2, subdivision (b)(1),[1] when the identity of the operator or owner of the vehicle is unknown. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

The underlying facts are essentially undisputed. Shortly after midnight on September 21, 2008 Smith was shot by an unknown assailant whose vehicle (a dark Mercedes SUV) pulled next to the Cadillac Escalade in which Smith was riding. The Escalade was owned by Kenyon Martin. Smith's cousin, DeShun Hart, was driving the Escalade with Martin's permission; Smith was riding in the front passenger seat; Smith's brother, Alex Alexander, was seated in the rear of the vehicle. The shooting took place shortly after Smith, Hart and Alexander left a Hollywood night club where they had been involved in a heated argument with an unknown male. Three shots were fired. One hit Smith in the back, leaving him paralyzed from the waist down.

On September 20, 2010, exactly two years after the shooting incident, Smith filed a lawsuit against Martin, Hart and Does 1 through 50 on the Judicial Council approved complaint form for personal injury, property damage, wrongful death (Judicial Council form PLD-PI-001). For type of action, Smith's counsel checked the "Other" box and inserted "General Negligence." The box for "motor vehicle" was not marked. With respect to the defendants sued as Does, Smith's counsel checked the box alleging all 50 "were the agents or employees of other named defendants and acted within the scope of that agency or employment." The form complaint attached a single cause of action for general negligence, which alleged, "Plaintiff was the right front passenger in his cousin's

---

[1] Statutory references are to the Insurance Code unless otherwise indicated.

2

car as defendant's vehicle pulled alongside plaintiff's vehicle. Defendant negligently allowed plaintiff's exposure to unreasonable risk of harm by not employing evasive action at which time another defendant shot at vehicle striking plaintiff in the back resulting in plaintiff's injury."

Smith voluntarily dismissed his action against Hart in February 2011 and filed a request for dismissal against Martin on April 21, 2011, leaving only Doe defendants.[2] Also on April 21, 2011 Smith sent a formal demand for uninsured motorist arbitration to Fireman's Fund, which had issued a personal automobile policy to Martin effective from April 10, 2008 to April 10, 2009. In a response dated May 17, 2011 Fireman's Fund stated it had determined it had no duty to provide Smith with uninsured motorist coverage and, therefore, declined the request for arbitration. Fireman's Fund acknowledged Smith was potentially an "insured" under the policy because he was occupying the insured vehicle at the time of the shooting and agreed he had suffered bodily injury within the meaning of the policy. However, Fireman's Fund explained his injury had not been caused by an accident, as defined, but rather was the result of an intentional criminal act. In addition, the shooter's vehicle did not qualify as an "uninsured motor vehicle," as defined by the policy. Because the owner and operator of that vehicle were unknown, uninsured motorist coverage was available only if the second vehicle had hit the insured vehicle, which all parties conceded had not occurred here. Finally, Fireman's Fund asserted Smith had failed to comply with the two-year notification requirement of section 11580.2.

Smith filed a petition to compel uninsured motorist arbitration in the Martin personal injury action; Fireman's Fund opposed the petition on the grounds set forth in its May 17, 2011 letter. The petition was denied on November 30, 2011. The denial was without prejudice because, in the court's view, uninsured motorist coverage might be available if Hart, the driver of the Escalade, was considered the uninsured motorist.

---

[2] The dismissal as to Martin was not entered by the court until May 3, 2011.

3

Smith filed a new petition to compel arbitration on June 5, 2012. Fireman's Fund filed an opposition in which it argued Smith did not contend Hart was the uninsured motorist and, in any event, Hart was driving an insured vehicle. With respect to the unknown shooter, Fireman's Fund insisted there was no coverage because there was no physical contact between the insured vehicle and the assailant's vehicle as required by both statute and the language of the insurance policy. In addition, Smith's injuries were caused by an intentional act; as such, he had not sustained bodily injury caused by an accident within the meaning of the policy. Finally, Fireman's Fund argued the uninsured motorist claim was barred by the statute of limitations because Smith had failed to file suit for bodily injury against the uninsured motorist or formally initiate arbitration proceedings by notifying the insurer within two years.

Following the filing of a reply by Smith and oral argument, the court denied the petition with prejudice on the ground there was no physical contact between the uninsured vehicle and the insured vehicle as required by 11580.2, subdivision (b)(1). Smith filed a timely notice of appeal.

## DISCUSSION

The right to uninsured motorist benefits is governed by section 11580.2. Section 11580.2, subdivision (a)(1), requires, unless expressly waived by the insured, all automobile liability insurance policies to provide for recovery, within specified limits, for bodily injury or wrongful death for which the owner or operator of an "uninsured motor vehicle" is responsible.[3] Section 11580.2, subdivision (b), defines "uninsured motor vehicle," and provides in part, "As used in this section, 'uninsured motor vehicle' means a motor vehicle with respect to the ownership, maintenance or use of which there is no bodily injury liability insurance or bond applicable at the time of the accident, . . . or the owner or operator thereof be unknown, provided that, with respect to an 'uninsured motor

---

[3] "The provisions of the uninsured motorist law '"are a part of every policy of insurance to which it is applicable."'" (*State Farm Mut. Auto. Ins. Co. v. Yang* (1995) 35 Cal.App.4th 563, 568.)

4

vehicle' whose owner or operator is unknown:  [¶]  (1) The bodily injury has arisen out of physical contact of the automobile with the insured or with an automobile that the insured is occupying. . . ."

The Fireman's Fund policy issued to Martin insuring the Cadillac Escalade in which Smith was riding when he was shot contained, in Part C, uninsured motorists coverage that paraphrased this definition.  Specifically an "uninsured motor vehicle" is defined to include "a hit-and-run vehicle whose operator or owner cannot be identified and which hits:  [¶]  a.  You or any family member;  [¶]  b.  A vehicle which you or any family member are occupying; or [¶]  c.  Your covered auto." (Boldface omitted.)[4]

Whether evaluated by the statutory language or the simpler, plain English wording of the Fireman's Fund policy, the trial court properly denied Smith's petition to compel arbitration on the ground being wounded by a drive-by shooter does not constitute being hit by a vehicle whose owner or operator is unknown, nor did the resulting bodily injury arise out of physical contact with such a vehicle.[5]  As was true in *State Farm Mut. Auto. Ins. Co. v. Yang* (1995) 35 Cal.App.4th 563 (*Yang*), in which the Court of Appeal affirmed a declaratory judgment denying uninsured motorist coverage to an individual who had been injured by a drive-by shooter, Smith was not hit by the dark Mercedes SUV and his injuries did not arise out of physical contact with it:  "His injury arose out of physical contact with the bullet which struck him.  The bullet was not set in motion or

---

[4]    The Part C uninsured motorists coverage insuring agreement provided, "We will pay compensatory damages which an insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury:  [¶] 1.  Sustained by an insured; and [¶] 2.  Caused by an accident.  [¶]  The owner's or operator's liability for these damages must arise out of ownership, maintenance or use of the uninsured motor vehicle." (Boldface omitted.)

[5]    Smith and Fireman's Fund agree this threshold issue of coverage is to be determined by the court and not an arbitrator.  (See *Bouton v. USAA Casualty Ins. Co*. (2008) 43 Cal.4th 1190, 1201 [questions of coverage—whether the claimant is entitled to take advantage of the protection provided by the policy at issue—must be resolved by the court not an arbitrator]; see also *Glaser, Weil, Fink, Jacobs & Shapiro, LLP v. Goff* (2011) 194 Cal.App.4th 423, 451.)

propelled by the [Mercedes]. . . .  The bullet was propelled by the gun from which the bullet was fired. . . .  Any movement of the car would generally be insignificant insofar as the propulsion of the bullet is concerned."  (*Id.* at p. 574.)[6]

In reaching its conclusion the *Yang* court explained and distinguished *Inter-Insurance Exchange of Auto. Club v. Lopez* (1965) 238 Cal.App.2d 441 and *Pham v. Allstate Ins. Co.* (1988) 206 Cal.App.3d 1193.  In *Lopez* car X had hit car B and propelled it into car C, the insured vehicle.  Car X then fled the scene.  The *Lopez* court concluded this qualified as physical contact by car X within the meaning of section 11580.2.  "We hold that where an unknown vehicle has struck a second vehicle and caused it to strike the insured vehicle, there is physical contact between the unknown vehicle and the insured vehicle within the meaning of the uninsured motorist endorsement."  (*Lopez,* at p. 446.)  In *Pham* a rock fell off a dump truck as it passed the insured vehicle travelling in the opposite direction.  The rock bounced on the highway and then penetrated the windshield of the insured's car, injuring her.  The *Pham* court concluded, as had the court in *Lopez*, there was coverage if the uninsured vehicle provided the direct application of force that caused another object to strike an insured's vehicle and injure the insured: "We can discern no logical difference between an object struck and propelled by an unknown vehicle and an object falling from such vehicle."  "We conclude that there is physical contact as required by the statute when either a part of a vehicle or an object which the vehicle is carrying strikes the insured or his vehicle."  (*Pham*, at p. 1198.)

In contrast, in *Barnes v. Nationwide Mutual Ins. Co.* (1986) 186 Cal.App.3d 541, also discussed in *Yang*, the plaintiff-insured lost control of her car after it had collided with a box of chairs lying on the road.  The court held there was no uninsured motorist coverage because there was no direct application of force from an uninsured vehicle:

---

[6]    Yang was standing in the parking lot of his apartment building when he was shot, not riding in his insured vehicle.  (*Yang, supra*, 35 Cal.App.4th at p. 66.)  Because he did not satisfy the physical contact requirement of section 11580.2, subdivision (b)(1), however, the court did not consider whether he otherwise would have qualified for uninsured motorist coverage.  (See *Yang,* p. 575.)

"Our courts have already considered and rejected the claim Ms. Barnes makes here, that because the box was a link on an otherwise unbroken chain of physical contact between the uninsured vehicle and her own, sufficient physical contact occurred." (*Barnes,* at pp. 543-544; see *Orpustan v. State Farm Mut. Auto. Ins. Co.* (1972) 7 Cal.3d 988, 994 [denying coverage to insured who was injured after he swerved to avoid hitting an uninsured motor vehicle; "[t]he statute makes proof of 'physical contact' a condition precedent in every case for the recovery of damages caused by an unknown vehicle"].)

In *Yang*, as in the case at bar (and like *Barnes*), there was no direct application of force by the uninsured motor vehicle to cause the bullet to reach its victim. "The mere fact that a bullet was located in the uninsured car before it was fired from the car is not enough. There was no direct application of force by [the uninsured vehicle] to cause the bullet to reach Yang [or, here, Smith]." (*Yang, supra*, 35 Cal.App.4th at p. 575.) Accordingly, Smith is not entitled to uninsured motorist coverage.

Seeking to distance himself from the holding and analysis in *Yang* and the unbroken line of cases upon which it relies, Smith contends Division Two of this court in *California Automobile Ins. Co. v. Hogan* (2003) 112 Cal.App.4th 1292 (*Hogan*) approved uninsured motorist coverage for the passenger-victim of a drive-by shooting. Smith misapprehends the language he quotes from the *Hogan* decision, which, in any event, is dictum.

In *Hogan* the insured/victim was punched by an enraged, uninsured motorcycle operator while the two men were exchanging information following an accident. The victim fell, hit his head on the pavement and died several days later. The motorcyclist pleaded guilty to manslaughter and was sentenced to state prison. (*Hogan, supra*, 112 Cal.App.4th at p. 1295.) Under the operative language of the victim's automobile liability policy, because the identity of the uninsured vehicle's owner/operator was known, the question presented on summary judgment was whether his liability for the victim's death arose out of the use of the uninsured motorcycle (*id*. at p. 1297). The *Hogan* court affirmed judgment for the carrier, applying a predominating

7

cause/substantial factor test and holding, under that test, there was no coverage: "Appellants emphasize the continuity of events that led from the collision to Mr. Hogan's injuries and argue that 'the two vehicles, the accident, and the injuries following from the accident are all part of one picture and constitute an unbroken chain of events arising from the subject accident.' But we conclude that the intervening tortious act by Mr. Lionetti [(the motorcyclist)] broke the chain of causation between the use of Mr. Lionetti's uninsured motorcycle and Mr. Hogan's injuries." (*Id.* at p. 1301; see also *id.* at p. 1304 ["[T]he collision with the uninsured vehicle was not the immediate cause of Mr. Hogan's injury. Nor was the injury caused by the operation of the uninsured vehicle."].)[7]

In its comprehensive opinion Division Two considered a number of out-of-state cases with similar facts that also concluded "'there is no motor vehicle coverage available for injuries sustained, when following the impact of two vehicles, one irate driver attacks another.'" (*Hogan, supra*, 112 Cal.App.4th at pp. 1302-1303.) The court also discussed three Colorado cases including *Cung La v. State Farm Auto. Ins. Co.* (Colo. 1992) 830 P.2d 1007, in which coverage for intentional acts was found. In *Cung La* three vehicles had surrounded the insured's vehicle while he was driving on Interstate 70. A passenger fired a shot from one of the other vehicles injuring the insured; the Colorado Supreme Court found coverage under the uninsured motorist provision of the victim's automobile liability policy, "reasoning that without the vehicle the assailant would not have been able to keep up with the insured's car, restrict the movement of the insured's car, or shoot the insured." (*Hogan*, at p. 1303.) Distinguishing the factual situation before it (an after-the-accident attack on the side of the road) and that presented in *Cung*

---

[7] In a subsequent section of its opinion the *Hogan* court also held public policy "prohibits insurance coverage for willful and criminal acts," citing provisions of both the Civil and the Insurance Codes. (*Hogan, supra*, 112 Cal.App.4th at p. 1304.) That same public policy, as well as Fireman Fund's policy language limiting uninsured motorist coverage to bodily injury "[c]aused by an accident," supports denial of the petition to compel arbitration on the ground Smith's injury was caused by an intentional criminal act.

*La*, the *Hogan* court observed, "we would agree that in *Cung La* the use of the vehicle was a substantial factor in causing the insured's injuries." (*Ibid.*)

Nothing in the holding of *Hogan* or even in its informal approval of the substantial-factor analysis in *Cung La* supports Smith's contention that firing a bullet from an uninsured vehicle constitutes "physical contact" by an uninsured vehicle within the meaning of section 11580.2, subdivision (b), or being "hit" by the vehicle under the Fireman's Fund policy.[8] Even if the unknown assailant's use of the dark Mercedes SUV was a substantial factor in causing Smith's injuries for some tort-related purposes, Smith's failure to establish any physical contact between the Mercedes and the Escalade necessarily defeats his claim for uninsured motorist coverage.

## DISPOSITION

The order denying the petition to compel arbitration is affirmed. Fireman's Fund is to recover its costs on appeal.

PERLUSS, P. J.

We concur:

ZELON, J.                    SEGAL, J.[*]

---

[8] Colorado's uninsured motorist statute, like those of a number of other states, does not require physical contact between the insured and uninsured vehicle as a prerequisite for coverage when the identity of the driver of the uninsured vehicle is unknown. (See Col. Rev. Stat. § 10-4-609 (2013); see generally *Farmers Ins. Exchange v. McDermott* (Colo.Ct.App. 1974) 527 P.2d 918, 920 [the physical contact restriction in the insured's policy "is an impermissible restriction upon the broad coverage required under the uninsured motorist statute"].)

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.